UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BARRY M. COHEN,<br><br>    Plaintiff,<br><br>v.<br><br>THE CITY OF NEWTON, THE NEWTON POLICE DEPARTMENT, POLICE CHIEF JOSE M. CORDERO, NEWTON POLICE OFFICER ROCKY MARINI (Badge No. 13963), NEWTON POLICE DETECTIVE ROBERT F. SAMPSON, NEWTON POLICE DETECTIVE SERGEANT GEORGE MCMAINS, NEWTON POLICE OFFICER ZACHARY RAYMOND, NEWTON POLICE OFFICER JOSEPH T. MCLAUGHLIN, THE NEWTON DIVISION OF THE DISTRICT COURT DEPARTMENT OF THE TRIAL COURT, HENRY H. SCHULTZ, CLERK MAGISTRATE, WILLIAM A. MCEVOY, Jr., ASSISTANT CLERK MAGISTRATE, MIDDLESEX DISTRICT ATTORNEY'S OFFICE, and the COMMONWEALTH OF MASSACHUSETTS,<br><br>    Defendants. | Civil Action No. 05-11727-DPW |

**COMMONWEALTH DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

Defendants the Commonwealth of Massachusetts (the "Commonwealth"), the Middlesex District Attorney's Office (the "MDAO"), the Newton Division of the District Court Department of the Trial Court (the "Newton District Court"), and Clerk Magistrate Henry H. Schultz and Assistant Clerk Magistrate William A. McEvoy, Jr. (together, the "Clerk Magistrates") (all previous defendants collectively, the "Commonwealth Defendants") respectfully submit this memorandum of law in support of their motion to dismiss, filed herewith.

Plaintiff Barry M. Cohen's Complaint and Claim for Jury Trial (the "Complaint" or "Compl.") purports to state six claims against the Commonwealth Defendants, the City of Newton, and various Newton police officers arising from Cohen's arrest on September 25, 2003. The Complaint must be dismissed as against each of the Commonwealth Defendants for at least two mutually-independent reasons: <u>First</u>, all of the Commonwealth Defendants are immune from suit under the Eleventh Amendment and the doctrine of sovereign immunity, rendering the Court without jurisdiction to hear any of the federal or state-law claims Cohen asserts. <u>Second</u>, Count I of the Complaint, which attempts to state a claim under 42 U.S.C. § 1983, fails as a matter of law because none of the Commonwealth Defendants are "person[s]" under that statute, and, because Count I is the only federal claim Cohen asserts, the Court should decline to exercise supplemental jurisdiction over the state-law claims in Counts II-VI.

## BACKGROUND

**I.    FACTS**[1]

On September 25, 2003, at approximately 1:15 a.m., Cohen left his parents' home in Newton to take a walk. Compl. ¶ 34. He was wearing gloves and carrying a flashlight. Compl., ¶ 35. After traveling approximately four blocks, while walking along Fellsmere Road, Cohen heard rustling noises coming from a white van parked on the opposite side of the street. Compl., ¶¶ 36, 39. Cohen then saw the driver's door on the van begin to open, and heard a voice from the van call to him to "get over here." Compl., ¶ 40. Cohen began to run. Compl., ¶ 41. While running, Cohen looked over his shoulder, and saw a man dressed in a black sweater and dark trousers running after him, carrying a badge in his hand. Compl., ¶ 42. Upon seeing the badge, Cohen stopped, and explained to the man (who Cohen later learned was Newton Police Officer

---

[1]    The "facts" in this section are as set forth in the Complaint, and treated as true for purposes of this motion only. *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993).

Rocky Marini) that he was out taking a walk, and had run away because he was afraid he was being attacked and/or kidnapped. Compl., ¶¶ 43-44. After relaying information about Cohen over his radio, and learning that Cohen had no outstanding warrants, Officer Marini declined to arrest Cohen and told him that he was "free to go." Compl., ¶¶ 46-47.

Later that morning, when Police Chief Jose M. Cordero learned of the incident, and that Cohen had not been arrested, he became upset and ordered that Cohen be arrested. Compl., ¶¶ 48-49. Officer Marini and the Newton Police then prepared a false and misleading incident report relating to Cohen's encounter with Officer Marini, suggesting that Cohen had engaged in criminal conduct. Compl., ¶¶ 50-51. Later that same day, the Newton Police applied for a warrant to arrest Cohen, despite knowing that no basis existed for the application. Compl., ¶ 52. Assistant Clerk Magistrate McEvoy rejected the request. Compl., ¶ 53. The Newton Police re-submitted the application, and a warrant was issued for Cohen's arrest. *Id.* The second application was granted by Assistant Clerk Magistrate McEvoy on the order of Clerk Magistrate Schultz, who himself was improperly pressured by Police Chief Cordero and the Newton Police. *Id.* These actions resulted in the Newton District Court issuing a warrant for Cohen's arrest in the absence of any probable cause to do so. Compl., ¶ 54.

During the evening of September 25, 2003, Cohen returned to his parents' home after running some errands. Compl., ¶ 56. He learned that telephone messages had been left for him by Detective Sampson of the Newton Police. *Id.* Cohen immediately returned Detective Sampson's calls. Compl., ¶ 57. Detective Sampson requested that Cohen come to the police station immediately, but refused to tell Cohen the reason for his request. Compl. ¶ 58. Cohen and Detective Sampson spoke on the telephone twice during the next ten minutes, during which Cohen informed Detective Sampson that he had an appointment, that he could not reschedule it,

3

and that as a result, it was a bad time for him to leave. Compl. ¶¶ 59-60. Detective Sampson ended their second conversation by telling Cohen, "We'll be in touch." *Id.*

Approximately ten minutes later, Cohen heard loud knocking at the front door to his parents' home. Compl. ¶ 61. Two men in plain clothes (who Cohen later learned were Detectives Sampson and McMains of the Newton Police) and one uniformed police officer (who Cohen later learned was Newton Police Officer Zachary Raymond) were at the door. Compl. ¶¶ 62, 65. As soon as Cohen began to open the door, the officers pushed the door open, entered Cohen's parents' home, and arrested Cohen. Compl. ¶ 63. They did not present Cohen with a warrant for his arrest. Compl. ¶ 64. While transporting Cohen to the police station, the officers used unreasonable and excessive force, including handcuffing Cohen too tightly. Compl. ¶ 66.

Following Cohen's arrest, Detectives Sampson and McMains, Officer Raymond, and Newton Police Officer Joseph T. McLaughlin subjected Cohen to harassment, threats, intimidation, and excessive force at the Newton police station. Compl. ¶ 69. This conduct included Detective McMains threatening that Cohen would be jailed indefinitely and held incommunicado unless Cohen signed a two-sided document bearing Cohen's fingerprints and many blank lines. Compl. ¶ 70. When Cohen refused to sign the document, Detective McMains became angry, and assaulted and used excessive force against Cohen while Cohen's wrists were cuffed to a steel pipe. Compl., ¶ 71. Cohen asked that he be able to consult with counsel regarding the fingerprint document, but was explicitly denied. Compl., ¶ 72. After Cohen indicated he would not sign the document without first consulting with counsel, Detective McMains had Cohen placed in a cell. Compl., ¶ 73. After an extended duration of solitary confinement and considerable delay, and after signing the document under great duress, Cohen was permitted to call his home to arrange for bail. Compl., ¶ 74. Cohen was later told that his

4

father had come to the station, but that Cohen's bail had suddenly been raised from $40.00 to $500.00, and this caused additional delay in Cohen's release. Compl., ¶ 75.

Cohen reported to the Newton District Court the following morning, and was arraigned on one count of attempted breaking and entering into a motor vehicle (Mass. Gen. Laws c. 274, § 6). Compl., ¶ 77. Mention of Cohen's arrest appear in the Newton Tab. Compl., ¶¶ 78-81. On October 21, 2003, the Newton District Court dismissed the charges against Cohen over the objection of the Middlesex District Attorney's Office. Compl., ¶ 83.

## II.   COHEN'S COMPLAINT

Cohen sets forth six counts in his complaint: "Policy of Non-Feasance in the Protection of Plaintiff's Civil Rights" (Count I), False Arrest/Imprisonment (Count II), Malicious Prosecution (Count III), Assault and Battery (Count IV), Common Law Negligence (Count V), and "Violation of Individual's Right to be Free From Unreasonable Searches and Seizures Under the Constitution of the Commonwealth" (Count VI). Cohen's Complaint is ambiguous as to which counts are alleged against which defendants. For purposes of this motion, however, the Commonwealth Defendants will assume that all six counts in the Complaint are alleged against all defendants, and respond accordingly.

## ARGUMENT

### I.   THE COMMONWEALTH DEFENDANTS ARE IMMUNE FROM SUIT, INCLUDING THE CLAIMS BROUGHT BY COHEN IN THIS CASE.

#### A.   Sovereign Immunity Bars Suits for Damages Against States and Arms of States.

The Eleventh Amendment to the United States Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

5

U.S. Const. Amend. XI. By its terms, the Amendment seems to bar only suits brought against a State in federal court by a citizen of another State. The Supreme Court has repeatedly made clear, however, that the sovereign immunity enjoyed by States is far broader than the literal language of the Amendment: "[t]he Eleventh Amendment confirmed rather than established sovereign immunity as a constitutional principle; it follows that the scope of the States' immunity from suit is demarcated not by the text of the Amendment alone but by fundamental postulates implicit in the constitutional design." *Alden v. Maine*, 527 U.S. 706, 729 (1999). To that end, State sovereign immunity also shields States from suits brought by their own citizens (as is the case here), *Hans v. Louisiana*, 134 U.S. 1 (1890), and applies with equal force to suits brought in state court. *Alden*, 527 U.S. at 735-40. Even more germane here, the Eleventh Amendment provides immunity against precisely the types of claims Cohen asserts in his Complaint: (1) Section 1983 claims, *Quern v. Jordan*, 440 U.S. 332, 342-45 (1979) (holding that 42 U.S.C. § 1983 does not abrogate State sovereign immunity); and (2) pendent state-law claims, *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 118-20 (1984). In short, sovereign immunity acts to bar suits by private citizens against States, subject to a few, specific exceptions not applicable here.[2]

---

[2] For example, sovereign immunity will not shield a State from suit if the state consents, *e.g. Hans*, 134 U.S. at 13 ("It is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent."), or if suit is brought under legislation passed pursuant to Section Five of the Fourteenth Amendment and which clearly evinces Congressional intent to abrogate State sovereign immunity. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 452-56 (1976) ("We think that Congress may, in determining what is 'appropriate legislation' for the purpose of enforcing the provisions of the Fourteenth Amendment, provide for private suits against States or state officials which are constitutionally impermissible in other contexts."); *see also Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("The Court has held that, absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court."). Neither exception applies here.

Importantly, the doctrine of sovereign immunity does not apply only to the State itself, but also arms of the State, including state agencies and state officials named as defendants in their official capacity. *Pennhurst*, 465 U.S. at 100 (observing that suits "in which the State or one of its agencies or departments is named as the defendant [are] proscribed by the Eleventh Amendment"); *Kentucky v. Graham*, 473 U.S. 159, 165-66, 169 (1985) (explaining that a suit naming an officer of a governmental entity in an official capacity is "treated as a suit against the entity" in "all respects other than name" and that thus, the sovereign immunity "bar remains in effect when state officials are sued for damages in their official capacity"). As described below, here, all of the Commonwealth Defendants are shielded from suit by sovereign immunity.

### B. The Doctrine of Sovereign Immunity Acts as a Bar to Cohen's Suit Against the Commonwealth, the MDAO, and the Newton District Court.

The Commonwealth, the MDAO, and the Newton District Court enjoy sovereign immunity, and are therefore immune from Cohen's claims in this case.

#### 1. The Commonwealth

The Commonwealth itself, as a State, unquestionably enjoys sovereign immunity, and is immune from both Cohen's purported Section 1983 claim, as well as his pendent state-law claims. For this reason alone, Cohen's Complaint must be dismissed as against the Commonwealth in its entirety.

#### 2. The Middlesex District Attorney's Office

As noted, a suit against a state agency is a suit against the State itself and is, therefore, proscribed by the doctrine of sovereign immunity. *Graham*, 473 U.S. at 165-66, 169. And, as this Court has previously recognized, the offices of the district attorneys of the Commonwealth are state agencies entitled to sovereign immunity. *Miller v. City of Boston*, 297 F. Supp. 361, 367-69 (D. Mass. 2003) (holding that the Office of the District Attorney for the Suffolk District

7

"is a state agency" and that "the Eleventh Amendment bars the § 1983 claim that [the plaintiff] has asserted against it"). As Judge Tauro recognized in *Miller*, the predominant function of the Commonwealth's district attorneys, including the MDAO, is to "appear for the [C]ommonwealth . . . in all cases, criminal or civil, in which the [C]ommonwealth is a party or interested," pending within its district. Mass. Gen. Laws ch. 12, § 27; *Miller*, 297 F. Supp. 2d at 368. Moreover, "the Attorney General has supervisory authority over all district attorneys and can take charge of cases that are being handled by the district attorneys." *Miller*, 297 F. Supp. 2d at 369 (citing Mass. Gen. Laws ch. 12, §§ 3, 6, 27). The Commonwealth also controls the purse-strings of the district attorneys' offices, as "the salaries of the district attorneys, their assistants and their employees are paid by the Commonwealth" and "[t]he district attorneys must also account to the Commonwealth for their expenses." *Id.* (citing *Lodge v. Dist. Attorney for the Suffolk Dist.*, 21 Mass. App Ct. 277, 281, 486 N.E.2d 764 (1985) and Mass. Gen. Laws ch. 12, §§ 15, 16, 19, 20, 20A, 22, 23, 24, 25, 25, 25A, 29). To be sure, while the district attorneys' offices are roughly divided by county, the jurisdiction of some offices span across county lines. *See* Mass. Gen. Laws ch. 12, § 13. In short, the MDAO, like all of the Commonwealth's district attorney's offices, is a state agency entitled to the full protection of sovereign immunity. Accordingly, Cohen's Complaint as against the MDAO must be dismissed in its entirety.

        3.     The Newton District Court

The Newton District Court is, like the MDAO, a state agency which enjoys sovereign immunity. *See Whalen v. Massachusetts Trial Court*, 397 F.3d 19, 29 (1st Cir. 2005) (noting that "the Eleventh Amendment bars monetary damages against the [Massachusetts] Trial Court itself"); *Oliver v. Superior Court of Plymouth County*, 799 F. Supp. 1273 (D. Mass. 1992) ("The Superior Court of Plymouth County is a state entity for purposes of Eleventh Amendment

8

immunity."). If there were any doubt, Massachusetts law make abundantly clear that the courts of the Commonwealth are arms of the State. The courts of the Commonwealth, including the district courts, are established by statute as creatures of the state. *See* Mass. Gen. Laws ch. 211B, § 1. In addition, "the salaries of the justices of the trial court shall be paid by the Commonwealth," Mass. Gen. Laws ch. 211B, § 4, and Massachusetts law makes clear that all court facilities are owned by the Commonwealth. Mass. Gen. Laws ch. 211B, §17. In short, the courts of the Commonwealth, including the Newton District Court, are state agencies funded by the Commonwealth. As a result, a suit against the Newton District Court is effectively one against the Commonwealth, and is barred by the doctrine of sovereign immunity. *See Whalen*, 397 F.3d at 29; *Oliver*, 799 F. Supp. at 1273-74. Cohen's Complaint against the Newton District Court must therefore be dismissed in its entirety.

### C.  The Clerk Magistrates are Immune From Suit on the Grounds of Either Sovereign Immunity or Absolute Judicial Immunity.

In his Complaint, Cohen appears to name the Clerk Magistrates as defendants in their official, rather than personal, capacities. Assuming that to be the case, the Clerk Magistrates are immune from suit under the doctrine of sovereign immunity. But even if Cohen's Complaint purported to name the Clerk Magistrates in their personal or individual capacities, they would still be immune from suit as they enjoy absolute judicial immunity.

> 1.  To the Extent Cohen Has Named the Clerk Magistrates as Defendants in their Official Capacities, His Suit is Barred by the Doctrine of <u>Sovereign Immunity.</u>

While Cohen's Complaint is somewhat ambiguous, he appears to name the Clerk Magistrates as defendants in their official, rather than personal, capacities. *See* Compl., ¶ 20 ("Each and all of the acts of the Defendants alleged herein were done by the Defendants, their agents, servants, and/or employees, and each of them, <u>not as individuals,</u> <u>but under the color and</u>

9

pretense of the statutes, ordinances, regulations, customs and usages of the Commonwealth and the City of Newton, and under the authority of their office as police officers and/or officials of said state, city and county.") (emphasis added).[3]  As noted above, a suit naming an officer of a governmental entity in an official capacity is "treated as a suit against the entity" in "all respects other than name," and the doctrine of sovereign immunity serves to immunize the official (in reality, the State) from suit.  *Graham*, 473 at 165-66 (1985).  Accordingly, because Cohen appears to name the Clerk Magistrates as defendants in their official capacities, his claims against them are treated as claims against the Commonwealth itself, and are barred by the doctrine of sovereign immunity.

     2.  To the Extent Cohen Has Named the Clerk Magistrates as Defendants in their Personal or Individual Capacities, the Clerk Magistrates Enjoy Absolute Judicial Immunity.

To the extent Cohen's Complaint can be construed as naming the Clerk Magistrates in their individual capacities, they are entitled to absolute immunity for all the claims set forth in the Complaint.  This is because the Clerk Magistrates, as judicial officers, are entitled to absolute immunity for actions taken within the scope of their judicial functions.  *Pierson v. Ray*, 386 U.S. 547, 553-54 (1967).  Indeed, as the Supreme Court has noted, "[f]ew doctrines [are] more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction."  *Id.*  Immunity exists regardless of the reasons

---

[3] In *Powell v. Alexander*, 391 F.3d 1, 22 (2004), the First Circuit adopted the so-called "course of proceedings" test to determine whether an official is sued in his individual or official capacity.  Here, however, there is no "course of proceedings" to analyze, only Cohen's Complaint.  As noted, the Complaint seems to expressly disclaim naming any defendant in an individual capacity.  Compl., ¶ 20.  Moreover, the Clerk Magistrates are described only as "the Clerk-Magistrate" and "the Assistant Clerk-Magistrate" "of the Newton District Court."  There is no indication that Cohen seeks to name personally as defendants, by for example, stating their place of residence or otherwise signaling that he seeks to impose personal liability upon them.  In any event, as described below, even if the Complaint may be construed to name the Clerk

motivating a judge's actions in the course of performing his judicial duties.  *See Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985) (citing *Bradley v. Fisher*, 80 U.S. 335 (1871)); *Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989) ("This immunity applies no matter how erroneous the act may have been, how injurious its consequences, how informal the proceeding, or how malicious the motive."); *see also Allard v. Estes*, 292 Mass. 187, 197 N.E. 884, 886 (1935) (stating that it is "too well settled to require discussion, that every judge, whether of a higher or lower court, is exempt from liability to an action for any judgment or decision rendered in the exercise of jurisdiction vested in him by law").  There are only two scenarios in which absolute judicial immunity can be overcome: (1) if the actions were not taken in the judge's judicial capacity; or (2) if the actions were taken in the complete absence of jurisdiction.  *See Overton v. Torruella*, 183 F. Supp. 2d 295, 300 (D. Mass. 2001) (citing cases).  Neither exception applies here.

   First, the only supposedly wrongful conduct that Cohen complains of with respect to the Clerk Magistrates is that they issued a purportedly "unlawful" warrant for Cohen's arrest not based on probable cause.  *E.g.*, Compl., ¶¶ 54, 93, 115, 125.  The issuance of a warrant by a magistrate is a unquestionably a judicial function.  *See Burns v. Reed*, 500 U.S. 478, 492 (1991); *Ireland v. Tunis*, 113 F.3d 1435, 1441 (6th Cir. 1997) ("[T]he issuance of an arrest warrant is a judicial act for judicial immunity purposes.").  That Cohen alleges the warrant was not based on probable cause and/or was issued based on the "improper urging of . . . the Newton Police," Compl., ¶ 53, does not alter that fact.  "Whether an act by a judge is a 'judicial' one relates to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity."

---

Magistrates in their individual capacities, Cohen's Complaint against them must still be

11

*Stump v. Sparkman*, 435 U.S. 349, 362 (1978).  Here, the issuance of a warrant for Cohen's arrest was an obviously and inherently judicial function.  *Burns*, 500 U.S. at 492; *Ireland*, 113 F.3d at 1441.  Tellingly, Cohen does not allege otherwise, nor could he.

Next, the Clerk Magistrates were not acting in the absence of jurisdiction.  Again, Cohen does not allege to the contrary, nor could he.  It was unquestionably within the jurisdiction of the Clerk Magistrates, serving at the Newton District Court, to issue a warrant for Cohen's arrest.

Because the Clerk Magistrates were performing judicial functions and not acting in the absence of jurisdiction, they are entitled to absolute judicial immunity.  Accordingly, to the extent Cohen's Complaint can be construed to name them in their personal or individual capacities, it must be dismissed against them in its entirety.

## II.   THE COMPLAINT MUST BE DISMISSED BECAUSE NONE OF THE COMMONWEALTH DEFENDANTS IS A "PERSON" UNDER 42 U.S.C. § 1983.

Even if any of the Commonwealth Defendants could be subjected to suit here (they cannot), Cohen's Complaint still must be dismissed because none of the Commonwealth Defendants is a "person" under 42 U.S.C. § 1983.  And since Cohen's Complaint contains just one federal claim—his Section 1983 claim in Count I—without that claim, there is no other basis for original federal subject-matter jurisdiction.  Accordingly, dismissal of the remainder of Cohen's Complaint, consisting only of state-law claims, would be appropriate.

### A.   Count I Must Be Dismissed Because None of the Commonwealth Defendants is a "Person" Within the Meaning of Section 1983.

In Count I of his Complaint, Cohen purports to state a claim under 42 U.S.C. § 1983.  But, because none of the Commonwealth Defendants are "person[s]" within the meaning of Section 1983, a Section 1983 claim cannot be maintained against any of the Commonwealth Defendants.  Section 1983 provides, in pertinent part:

---

dismissed based on the grounds of absolute judicial immunity.

12

> Every person who, under color of [state law], subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983 (emphasis added). It is well-established that a State is not a "person" for purposes of Section 1983. *See, e.g.*, *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 64 (1989); *Lapides v. Board of Regents of Univ. System of Georgia*, 535 U.S. 613, 617 (2002) ("[A] State is not a 'person' against whom a § 1983 claim for money damages might be asserted."). Similarly, neither state agencies (like the MDAO and the Newton District Court) nor state officials acting in their official capacities (like the Clerk Magistrates) are "person[s]" within the meaning of Section 1983 either. *Will*, 491 U.S. at 71; *Johnson v. Rodriguez*, 943 F.2d 104, 108 (1st Cir. 1991) ("It is settled beyond peradventure, however, that neither a state agency nor a state official acting in his official capacity may be sued for damages in a § 1983 action."). Because none of the Commonwealth Defendants is a "person" for the purposes of Section 1983, Count I is deficient on its face, and must be dismissed.

    **B.**    **The Court Should Decline to Exercise Supplemental Jurisdiction Over Cohen's Remaining State-Law Claims.**

Importantly, Count I is the only federal claim in Cohen's Complaint, and thus serves as the only basis for original federal subject-matter jurisdiction. If Count I is dismissed—as it should be—only state-law claims would remain. As explained previously, these state-law claims must be dismissed against the Commonwealth Defendants on grounds of sovereign immunity and/or absolute immunity. But if the Court were to reject these arguments, and conclude that the state-law claims are otherwise valid, the Court should still dismiss them in the event it dismisses Count I (the Section 1983 claim). Under the supplemental jurisdiction statute, the Court "may

decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Here, if Count I is dismissed, the Court would not have original jurisdiction over any of Cohen's other claims, and should decline to exercise jurisdiction over his supplemental state-law claims in Counts II-VI. *See Rodriguez v. Doral Mortgage Corp.*, 57 F.3d 1168, 1177 (1st Cir. 1995) ("As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims."); *Boston Scientific Corp. v. Schneider (Europe) AG*, 983 F. Supp. 245, 273 (D. Mass. 1997) (Woodlock, J.) ("Having dismissed the federal claims, I decline to exercise supplemental jurisdiction and dismiss the state claims as well under 28 U.S.C. § 1367(c)(3).").

## **CONCLUSION**

For the foregoing reasons, the Court should allow the Commonwealth Defendants' motion, and dismiss Cohen's Complaint as against all of the Commonwealth Defendants.

Respectfully submitted,

THE COMMONWEALTH OF MASSACHUSETTS

THE MIDDLESEX DISTRICT ATTORNEY'S OFFICE,

THE NEWTON DIVISION OF THE DISTRICT COURT DEPARTMENT OF THE TRIAL COURT,

HENRY H. SCHULTZ, CLERK MAGISTRATE, and

WILLIAM A. MCEVOY, Jr., ASSISTANT CLERK MAGISTRATE

By their attorney,

THOMAS F. REILLY
ATTORNEY GENERAL


 /s/ Scott A. Katz
Scott A. Katz (BBO # 655681)
Assistant Attorney General
Criminal Bureau
One Ashburton Place
Boston, Massachusetts  02108
(617) 727-2200, ext. 2833

Dated:  November 2, 2005


**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon counsel for all parties in this matter by first-class mail, postage prepaid, on November 2, 2005.

/s/ Scott A. Katz
Scott A. Katz