UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BARRY M. COHEN, ) | |
|       Plaintiff ) | |
| ) | |
| v. ) | CIVIL ACTION |
| ) | NO. 05-11727 DPW |
| THE CITY OF NEWTON, THE NEWTON ) | |
| POLICE DEPARTMENT, POLICE CHIEF ) | |
| JOSE M. CORDERO, NEWTON POLICE ) | |
| OFFICER ROCKY MARINI, (BADGE NO. ) | |
| 13963) NEWTON POLICE DETECTIVE ) | |
| ROBERT F. SAMPSON, NEWTON POLICE ) | |
| POLICE DETECTIVE, NEWTON POLICE ) | |
| DETECTIVE SERGEANT GEORGE ) | |
| MCMAINS, NEWTON POLICE OFFICER ) | |
| ZACHARY RAYMOND, AND NEWTON ) | |
| POLICE OFFICER JOSEPH T. MCLAUGHLIN,) | |
|       Defendants ) | |

## AFFIDAVIT OF ANGELA B. SMAGULA

I, Angela B. Smagula, under oath, depose and say as follows:

1.  I am an Assistant City Solicitor for the City of Newton representing Defendants in the above-captioned matter.

2.  I submit this affidavit in support of Defendants' Motion to Compel Medical Records as to facts of my own personal knowledge.

3.  In Paragraphs 111, 121, 141 and 145 of Plaintiff's Complaint, Plaintiff claims to have suffered damages including, but not limited to:

> "Sustained severe memory shock and mental anguish, great physical pain and emotional upset, has suffered and continues to suffer serious and extreme mental and emotional anguish, distress and psychological damages and difficulties. . ."

A true and accurate copy of Plaintiff's Complaint (excluding voluminous exhibits) is attached hereto as Exhibit A.

4.      Plaintiff has further identified, itemized, and explained in greater detail these emotional damages in his answers to interrogatories. Defendants' Interrogatory No. 2 stated, "Please identify and describe each instance of emotional distress and psychological damage that you claim was caused by the Defendants, including dates and symptoms." Plaintiff answered that he has long suffered from Obsessive-Compulsive Disorder, prior to and at the time of the incident in question, and further describes his damages to include, a "worsening and exacerbation" of the following symptoms:  persecutory anxiety, fear of being alone, continual distress and anxiety, anorexia and weight loss, gastrointestinal distress, depression, demoralization, pleasurelessness, negative associations and intrusive memories, compulsive re-living of the incident, fatigue, lethargy, humiliation and embarrassment of being associated with criminal action, social anxiety and withdrawal, feelings of isolation,  insomnia, fear of being arrested, and Obsessive Compulsive Disorder and heightening of obsessive concern.  A true and accurate copy of Plaintiff's Answers to the Defendants' First Request for Interrogatories is attached hereto as Exhibit B.

5.      On December 6, 2005, the Newton Defendants propounded upon Plaintiff their First Request For Production of Documents and their First Set of Interrogatories.  This First Request For Production of Documents included critical document requests for Plaintiff's medical records concerning the physical, mental and emotional damages allegedly sustained by the Plaintiff, as well as medical records concerning his mental and emotional disorders and conditions prior to the incident in question (Defendants' Requests No. 1 and 2).  A true and

2

accurate copy of the Defendants' First Request For Production of Documents is attached hereto as Exhibit C.

6.    As the original response date approached, Plaintiff's counsel contacted counsel for the Newton Defendants and twice requested and was granted an extension of time to respond to Defendants' First Request for Production of Documents and Defendants' First Set of Interrogatories. The Newton Defendants finally did receive Plaintiff's outstanding discovery responses: document responses on January 18, 2006 and interrogatory answers on February 9, 2006 (a full three weeks after the last agreed upon date). True and accurate copies of the January 5 and January 17, 2006 correspondence between counsel concerning these extensions of time is attached hereto as Exhibit D.

7.    Plaintiff's Responses to Defendants' First Request For Production of Documents, Requests Nos. 1 and 2, stated that the requested medical records would be produced and would be forthcoming "as soon as practicable". A true and accurate copy of Plaintiff's Responses to Defendants' First Request For Production of Documents are attached hereto as Exhibit E.

8.    When medical records were not timely produced, counsel for the Newton Defendants sent a letter to Plaintiff's counsel on February 10, 2006, inquiring as to when the medical records would be produced. The Newton Defendants' counsel reiterated in that letter the relevance and importance of receiving Plaintiff's medical records in a timely fashion, as Plaintiff could not be deposed without these records. The Newton Defendants' counsel requested the documents be produced no later than February 24, 2006. A true and accurate copy of the letter dated February 10, 2006 is attached hereto as Exhibit F.

9.    On February 14, 2006, the Newton Defendants propounded a Second Request For Production of Documents requesting additional medical documentation regarding Plaintiff's

emotional and mental ailments identified in greater detail, and alleged to be directly caused or exacerbated by the Newton Defendants purported conduct, in Plaintiff's answers to interrogatories. A true and accurate copy of Defendants' Second Request For Production of Documents is attached hereto as Exhibit G.

10.     In response to the Newton Defendants' counsel's February 10, 2006 letter, Plaintiff's counsel contacted the Newton Defendants' counsel and explained that he was in the midst of collecting the medical records from Plaintiff and from Plaintiff's doctors, but despite best efforts, he was having some difficulty. Plaintiff's counsel indicated that he believed he would produce at least *some* of Plaintiff's medical records by the February 24, 2006 deadline. However, February 24, 2006 came and went and no medical records were produced. During the week of February 27, 2006. Plaintiff's counsel again contacted the Newton Defendants' counsel and explained that he was still collecting the records and that he would produce the same by March 3, 2006. The parties then agreed Plaintiff would produce his medical records no later than March 7, 2006. otherwise the Newton Defendants would file a Motion to Compel. A true and accurate copy of the letter dated March 1, 2006 documenting this telephonic conversation is attached hereto as Exhibit H.

11.     Suddenly on March 7, 2006. the very last day the medical records were to be produced, Plaintiff's counsel sent an email to Defendants' counsel stating that Plaintiff *would not* be producing any medical documentation and that he "no longer wishes to pursue his claims for special medical damages and/or otherwise present any evidence relative to his medical treatment." A true and accurate copy of Plaintiff's counsel's March 7, 2006 email is attached hereto as Exhibit I.

12.    Over the next week counsel for both parties had a series of telephone conversations following this surprising email "disclosure", after which Defendants determined that it had no choice but to file a Motion to Compel Plaintiff's medical records.

Signed under the pains and penalties of perjury this 27 day of March, 2006.

/s/ Angela B. Smagula

_____

Angela B. Smagula

EXHIBIT A

UNITED STATES OF AMERICA
DISTRICT OF MASSACHUSETTS

05 - 11727 DPW

FILED
...RKS OFFICE

2005 AUG 19 P 2: 48

...DISTRICT COURT
...RICT OF MASS

------------------------------

Barry M. Cohen,                    )
                                   )
        Plaintiff,                 )
                                   )
        v.                         )        Civil Action No.:
                                   )
The City of Newton, The Newton     )
Police Department,                 )
Police Chief Jose M. Cordero,      )
Newton Police Officer Rocky Marini )
(Badge No. 13963),                 )
Newton Police Detective Robert F.  )
Sampson, Newton Police Detective   )
Sergeant George McMains,           )
Newton Police Officer Zachary      )
Raymond, Newton Police Officer     )
Joseph T. McLaughlin,              )
The Newton Division of the         )
District Court Department of       )
The Trial Court,                   )
Henry H. Schultz, Clerk            )
Magistrate,                        )
William A. McEvoy, Jr., Assistant  )
Clerk Magistrate,                  )
Middlesex District Attorney's      )
Office, and The Commonwealth       )
Of Massachusetts,                  )
                                   )
        Defendants.                )

----------------------------------

## PLAINTIFF'S COMPLAINT AND CLAIM FOR JURY TRIAL

### PARTIES

1.    The Plaintiff, Barry M. Cohen (hereinafter "Mr. Cohen"), is an individual residing in Newton, Massachusetts.

1

2.    The Defendant, The City of Newton (hereinafter "The City"), is a municipality located in the Commonwealth of Massachusetts, with municipal offices located at City Hall, 1000 Commonwealth Avenue, Newton Centre, Massachusetts 02459.  At all times relevant hereto, The City was and is a municipality existing under and by virtue of the laws of the Commonwealth of Massachusetts.

3.    The Defendant, The Newton Police Department (hereinafter "the Newton Police") was, at all times relevant hereto, operated, maintained, managed, supervised and controlled as a police department as part of and in conjunction with the municipal functions of The City, with headquarters located at 1321 Washington Street, West Newton, Massachusetts.

4.    The Defendant, Police Chief Jose M. Cordero (Hereinafter "Cordero"), was the Chief of the Newton Police Department at all times relevant hereto, with an unknown shield number.

5.    The Defendant, Police Officer Rocky Marini (hereinafter "Marini"), is a police officer employed by the Newton Police, with a badge number of 13963.

6.    The Defendant, Police Detective Robert F. Sampson (hereinafter "Sampson"), is a police detective employed by the Newton Police, with an unknown shield number.

7.    The Defendant, Police Detective Sergeant George McMains (hereinafter "McMains"), is a police detective employed by the Newton Police, with an unknown shield number.

8.    The Defendant, Newton Police Officer Zachary Raymond (hereinafter "Raymond"), is a police officer employed by the Newton Police, with an unknown badge number.

9.    The Defendant, Newton Police Officer Joseph T. McLaughlin (hereinafter "McLaughlin"), is a police officer employed by the Newton Police, with an unknown badge number.

10. The Defendant, The Newton Division of the District Court Department of the Trial Court (hereinafter the "Newton District Court"), has a usual place of business on Washington Street, Newton, Massachusetts.

11. The Defendant, Henry H. Schultz (hereinafter "Magistrate Schultz"), is the Clerk-Magistrate of the Newton District Court.

12. The Defendant, William A. McEvoy, Jr. (hereinafter "Magistrate McEvoy"), is the Assistant Clerk-Magistrate of the Newton District Court.

13. The Defendant, The Middlesex District Attorney's Office (hereinafter "Middlesex D.A."), is an agency of the Commonwealth of Massachusetts, with a usual place of business at 40 Thorndike Street, East Cambridge, Massachusetts.

14. The Defendant, the Commonwealth of Massachusetts (hereinafter "The Commonwealth"), is the sovereign and is named a party herein by and through the Attorney General of the Commonwealth of Massachusetts, with a usual place of business at Ashburton Place, Boston, Massachusetts.

## BACKGROUND

15. Mr. Cohen is forty-three years old. He grew up in and has resided in Newton, Massachusetts, with his parents, for most of his life.

16. Prior to the incidents described herein, Mr. Cohen had never been arrested; charged with a crime; been a defendant in a criminal matter; or otherwise subject to a criminal investigation.

17. All of the conditions precedent to the commencement of an action against the Defendants the City of Newton, the Middlesex D.A., and the Commonwealth have been satisfied. A copy of the Plaintiff's presentment letters to those entities is hereto attached as Exhibit 1. The City of Newton and the Commonwealth have responded to the Plaintiff's presentment letters, a copy of which responses are hereto attached as Exhibit 2. The Middlesex D.A. has not responded to Mr. Cohen's presentment letter.

18.  At all times relevant hereto, the City of Newton employed the Defendants Cordero, Marini, Raymond, McLaughlin, Sampson, and McMains as a police chief, police officers and police detectives, in their respective capacities.

19.  At all times relevant hereto, the Commonwealth, employed the Defendants Magistrate Schultz and Magistrate McEvoy as the Clerk-Magistrate and Assistant Clerk Magistrate of the Newton District Court, respectively.

20.  Each and all of the acts of the Defendants alleged herein were done by the Defendants, their agents, servants and/or employees, and each of them, not as individuals, but under the color and pretense of the statutes, ordinances, regulations, customs and usages of the Commonwealth and the City of Newton, and under the authority of their office as police officers and/or officials of said state, city and county.

A.    **The Newton Police's Over-Aggressive Policies and Practices**

21.  In February 2002, the City of Newton hired the Defendant Cordero to become the Chief of the Newton Police.

22.  Cordero then implemented new policies and a new philosophy of policing within the City of Newton. Cordero's policies recklessly encouraged aggressive police tactics and resulted in almost a tripling of the number of arrests in Newton during the period from February 2002 to February 2003.  A copy of a Newton Tab article detailing the increase in arrests in Newton is hereto attached as Exhibit 3.

23.  Upon information and belief, the Newton Police engaged in targeted and aggressive policing in an effort to demonstrate to the public that the Police were providing a high level of public safety.  See copy of editorial authored by Cordero regarding public safety, which appeared in the Newton Tab, hereto attached as Exhibit 4.

24.  Newton Police officers and the community at large were critical of the "heavy handed" and "over-aggressive" nature of Cordero's policies, especially with regard to Cordero's efforts to reduce the officers' ability to employ discretion when deciding when to detain and/or arrest

4

suspects.  See copy of editorial of Officer John Daly, hereto attached as Exhibit 5.

25.  Upon information and belief, the Newton District Court, Magistrate Schultz, and Magistrate McEvoy assisted Cordero in implementing said aggressive police tactics by willfully and/or recklessly forsaking their role to evaluate the constitutionality and propriety of the Police's actions.  By so doing, the Newton District Court, Magistrate Schultz, and Magistrate McEvoy effectively abandoned their impartial judicial function and became in effect a "rubber stamp" of the police's efforts to aggressively police Newton.

26.  Upon information and belief, despite the Newton Police's over-aggressive policies, during the period from April through August 2003, there was a sharp increase in the number of reported car burglaries.  During the month of March 2003, there were only approximately eight (8) car breaks in Newton.  In the month of May 2003, alone, the number of car breaks had increased to approximately fifty-two (52).  The exponential increase in the number of car breaks during mid-2003 triggered great public concern.

27.  Upon information and belief, the Newton Police were embarrassed by and concerned about the negative public sentiment regarding the large number of car robberies, which were occurring during the summer of 2003 despite their implementation of very aggressive policing tactics. Thus, the Newton Police further heightened their already reckless and aggressive approach in an effort to put an end to the embarrassing rash of car breaks.

28.  Indeed, Cordero himself stated with respect to the number of car breaks that "It's a big deal all of a sudden we've had 156 car breaks . . . and we're going to have 156 more if we don't do anything."  See copy of Newton Tab article quoting Cordero, hereto attached as Exhibit 6.

29.  On September 18, 2003, in apparent response to public pressure and dissatisfaction due to the large number of car breaks, Cordero issued a press release, which advised Newton residents, how to avoid car robberies.   A copy of said press release is hereto attached as Exhibit 7.

5

30.   By issuing the press release, Cordero and the
Police clearly sought to make a public display of their
attempt to prevent further car robberies and had decided to
dedicate extra resources to attempting to catch the
perpetrator(s) of the numerous above-referenced car
robberies.

31.   Specifically, Cordero and the Police ordered
Marini to conduct a surveillance operation during the early
morning hours of September 25, 2003 in a targeted effort to
catch the perpetrator(s) of the numerous car robberies.

32.   In July 2004, without notice or warning, Cordero
suddenly resigned as Police Chief.  See copy of article
from the Newton Tab relating to said resignation, hereto
attached as Exhibit 10.  Cordero's resignation was so
abrupt that Cordero was caused to forfeit one hundred and
twenty (120) days of sick pay.  See Exhibit 8.

33.   At all relevant times, the Defendants were
engaged in the enactment, implementation, and execution of
policies and procedures, which were unconstitutional and/or
likely to result in the violation of the rights of
individuals, including the Plaintiff.

B.   **Mr. Cohen's Encounter with the Newton Police**

34.   On Thursday, September 25, 2003, at approximately
1:15 A.M. (hereinafter "the night of the incident"), Mr.
Cohen, as customary, left his parent's home to take a brief
walk in his neighborhood.

35.   On the night of the incident, Mr. Cohen was
carrying a flashlight, as he regularly does as a safety
precaution, and was also wearing brown dress gloves, as he
regularly does.

36.   Shortly after leaving his parent's home, having
traveled approximately four blocks, Mr. Cohen was lawfully
walking along Fellsmere Road away from Ward Street and
towards Mandalay Road.

37.   Mr. Cohen observed an overturned trash barrel and
refuse strewn directly in front of his path and all over
the street.

38. After observing the refuse, Mr. Cohen began to re-trace his steps towards Ward Street.

39. As soon as Mr. Cohen began to backtrack towards Ward Street, he heard rustling noises apparently coming from a white van which was parked on the opposite side of Fellsmere Road, diagonally across from where Mr. Cohen was lawfully walking. These noises caused Mr. Cohen to become concerned.

40. As Mr. Cohen had nearly passed the point parallel to the position of the white van on the opposite side of Fellsmere Road, Mr. Cohen saw the driver's door begin to open and heard a voice coming from the van call "hey, hey you, get over here."

41. Upon hearing this voice, Mr. Cohen became more frightened and ran towards Ward Street. At all relevant times, Mr. Cohen was on the opposite side of Fellsmere Road from the location of the said van.

42. After a few additional seconds, Mr. Cohen looked back over his shoulder as he was running towards Ward Street and observed a man dressed in a black sweater and dark trousers running after him with a hand-held badge.

43. It was later learned by Mr. Cohen that the man following him was the Defendant, Marini. Marini was conducting a targeted surveillance operation in an effort to try to catch the perpetrator(s) of the aforementioned car robberies as part of his regular and official employment as a police officer for the Defendants, the City and the Newton Police.

44. Mr. Cohen stopped running upon seeing Marini's badge and immediately explained to Marini that he was out for a walk, and that he had run only because he was afraid that he was being "attacked" and/or "kidnapped."

45. Marini responded to Mr. Cohen, at least twice, that "you were just in the wrong place at the wrong time, bro" and that "if you're out this late, you'll be stopped every time."

46.  Marini then relayed information relating to Mr. Cohen over his radio and the message "no warrants" came back over the radio.  Marini then told Mr. Cohen that "you are free to go" and Mr. Cohen then went home.

47.  Despite being encouraged by Cordero and the Newton Police to engage in aggressive police tactics and make arrests, and despite being sent on patrol in a concentrated effort to stop further car-breaks, Marini elected <u>not</u> to arrest Mr. Cohen early in the morning on September 25, 2003.

**B.    The Decision to Arrest Mr. Cohen**

48.  Upon information and belief, when Cordero learned of Marini's early morning encounter with Mr. Cohen, Cordero became upset that an arrest of Mr. Cohen had not been made on the night of the incident, although no factual or legal basis existed to permit arrest.

49.  Upon information and belief, despite Marini's on-scene decision not to detain or arrest Mr. Cohen and despite the lack of any additional information, Cordero ordered police officers and detectives to arrest Mr. Cohen the next day.

50.  Therefore, in direct contravention and willful and wanton disregard of Mr. Cohen's civil rights, the Newton Police and Marini prepared a false and improperly suggestive incident report (hereinafter "the report") relating to the encounter with Mr. Cohen on Fellsmere Road (Incident Report Number 359046).  A copy of said report is hereto attached as Exhibit 9.

51.  The report was intentionally infused with a variety of misrepresentations designed to unlawfully create the false impression that Mr. Cohen was engaged in criminal conduct during his encounter with Marini.

52.  Upon information and belief, the Newton Police unlawfully applied for a warrant authorizing the false arrest of Mr. Cohen later on September 25, 2003 despite knowing that no basis existed for any such warrant application.

53. Upon information and belief, Magistrate McEvoy rejected the Police's initial request for a warrant. The Newton Police apparently re-submitted their request for the issuance of the warrant and the second request was apparently granted by Magistrate McEvoy on the order of Magistrate Schultz at the improper urging of Cordero and the Newton Police.

54. The Newton District Court, in direct contravention of the law and despite the absence of any probable cause to justify arrest, issued a warrant to arrest Mr. Cohen. A copy of the warrant produced in response to Mr. Cohen's demand letter indicates that Magistrate Schultz signed the warrant. A copy of the warrant as produced is hereto attached as Exhibit 10. The Defendant Magistrates knew or should have known that no legal justification existed for the issuance of the warrant for Mr. Cohen's arrest.

55. It should be noted that, upon information and belief, the circumstances surrounding the issuance of the warrant for Mr. Cohen's arrest were not in the ordinary course of normal procedure.

C. **Mr. Cohen's False Arrest**

56. Upon returning to his parent's home from some errands on the evening on September 25, 2003, Mr. Cohen discovered that telephone messages had been left by a person who identified himself as Detective Sampson (hereinafter "Sampson") of The Newton Police.

57. Mr. Cohen returned Sampson's telephone calls immediately.

58. Sampson requested that Mr. Cohen come to the police station immediately. Sampson was unwilling to tell Mr. Cohen the reason for his request.

59. Over the course of the next approximately ten minutes, Mr. Cohen and Sampson spoke twice on the telephone regarding Mr. Cohen's attempts to accommodate the Sampson's request, despite having a previously scheduled appointment.

60. Mr. Cohen advised Sampson that he had been unable to reach anyone to re-schedule his appointment and thus it was a bad time for him to leave. Sampson shortly

thereafter ended the conversation by saying "We'll be in touch."

61. Approximately ten minutes after the second telephone conversation with Sampson ended, Mr. Cohen heard loud knocking at the front door of his parents' home.

62. At the door of Mr. Cohen's parents' home were two men dressed in plain clothes and one uniformed police officer.

63. As soon as Mr. Cohen began to open the door, the police officers pushed the door open and all three men entered Mr. Cohen's parents' home and arrested Mr. Cohen.

64. No warrant was ever presented to Mr. Cohen at the time of his arrest. Despite requests of Mr. Cohen and his counsel, no copy of the warrant has ever been produced.

65. It was later learned that the identity of the men in plain clothes were the Defendants Sampson and McMains. The identity of the uniformed officer was apparently Police Officer Zachary Raymond.

66. The Defendants Sampson, McMains, and Raymond, used unreasonable and excessive force during the false arrest of Mr. Cohen and during the transport of Mr. Cohen to the police station, which excessive force included, but was not limited to, handcuffing Mr. Cohen too tightly.

67. It should be noted that Marini was not present at the time of Mr. Cohen's arrest; at any time during his false imprisonment; and/or during any of Mr. Cohen's court appearances.

D.    **Mr. Cohen's False Imprisonment**

68. Mr. Cohen was knowingly falsely arrested and falsely imprisoned without probable cause or legal justification during the night of September 25, 2003 at the Newton Police station.

69. During his false imprisonment, McMains, Sampson, Raymond, and McLaughlin and other unknown police officers subjected Mr. Cohen to harassment, threats, intimidation, and excessive force. This improper conduct included, but was not limited to, McMains' continuous threats and verbal

harassment of Mr. Cohen throughout the course of his false imprisonment.

70. Among other things, McMains threatened Mr. Cohen that he would be indefinitely jailed and precluded from contacting anyone unless Mr. Cohen signed a two-sided document, which bore Mr. Cohen's, fingerprints and which also contained many blank lines.

71. Mr. Cohen was reluctant to sign the document as he was intentionally not informed of its purpose and thus feared it could be filled in by the Newton Police with false information. Mr. Cohen's said reluctance apparently angered McMains, who assaulted and used excessive force against Mr. Cohen while both his wrists were cuffed to a steel pipe.

72. Moreover, on several occasions Mr. Cohen invoked his constitutional right to counsel by requesting that he be allowed to discuss the order to sign the fingerprint document with an attorney. Mr. Cohen's requests for counsel were explicitly denied. McMains assault and use of the ultimatum of indefinite imprisonment in an attempt to coerce Mr. Cohen's to sign the document was most egregious.

73. When Mr. Cohen indicated he would not sign the document without first reviewing same with his counsel, McMains had Mr. Cohen placed in a cell.

74. Only after an extended duration of solitary confinement and considerable delay, and after signing the document under great duress, was Mr. Cohen allowed to call his home to arrange for bail.

75. Some time later, Mr. Cohen was then told that his father had come to the station but that Mr. Cohen's bail had suddenly been raised from $40.00 to $500.00. This caused additional delay in Mr. Cohen's release.

76. Mr. Cohen was not released until some time late in the evening and was subject to unlawful and inappropriate intimidation, harassment, and excessive force throughout the course of his imprisonment.

### E.    **Mr. Cohen's Malicious Prosecution**

77.    Mr. Cohen reported to the Newton District Court the morning following his arrest (September 24, 2003) and was arraigned and charged with violating M.G.L. c. 274, Section 6, Attempt to Commit A Crime, Breaking Into A Motor Vehicle.  There was no legal or factual basis for said charges being levied against Mr. Cohen.

78.    Shortly after Mr. Cohen's arrest, notice thereof was reported in the Newton Tab on October 1, 2003.

80.    The Newton Tab is a weekly newspaper widely circulated in the City.  It was a great humiliation, slander, and embarrassment to Mr. Cohen (a lifelong Newton resident) for his name, address, and a description of his arrest to appear in the "Police Log" portion of the Newton Tab.

81.    Moreover, on October 15, 2003, an article was published in the Newton Tab by Cordero, which reported that an arrest had been made in connection with said rash of car robberies.  Copies of said article is hereto attached as Exhibit 11.

82.    In the clearest indication of the unlawful nature of the criminal charges levied against Mr. Cohen, the Newton District Court dismissed the charges against Mr. Cohen on October 21, 2003, approximately one month after Mr. Cohen's arrest and after Mr. Cohen had made three court appearances.

83.    Said dismissal occurred during a pre-trial proceeding and was entered by the Court over the objection of the Middlesex District Attorney's office.

### COUNT I
### (POLICY OF NON-FEASANCE IN THE
### PROTECTION OF PLAINTIFF'S CIVIL RIGHTS)

84.    The Plaintiff repeats and realleges the paragraphs 1 through 83 as if set forth fully herein.

85.    Upon information and belief, the Defendants Cordero, Marini, Sampson, and McMains are graduates of The Police Academy of the Commonwealth, which Academy is

operated by the Commonwealth for purposes of training the State and local police officers who serve throughout the Commonwealth.

86.   At all times relevant hereto, the Defendants the City and the Commonwealth had the duty to competently and sufficiently hire, train and retain within the Police Academy and at the Command and Patrol levels, the Defendant Officers in the protection of the Constitutional rights of the Plaintiff under the Fourteenth Amendment to the United States Constitution.

87.   In addition, the Defendants the City and the Commonwealth had the duty to competently and sufficiently hire, train and retain within the Police Academy and at the Command and Patrol levels, the defendant officers to conform their conduct to a standard, established by law, for the protection of citizens, such as Plaintiff, against unreasonable risk of harm by conducting themselves in such a manner as not to intentionally, wantonly, and/or negligently inflict injuries to citizens such as the Plaintiff herein.

88.   The Defendant the Commonwealth had the duty to competently and sufficiently hire, train and retain the Defendants the Newton District Court, Magistrate Schultz, Magistrate McEvoy, and the Middlesex D.A. to conform their conduct to a standard, established by law, for the protection of citizens, such as Plaintiff, against unreasonable risk of harm by conducting themselves in such a manner as not to intentionally, wantonly, and/or negligently inflict injuries to citizens such as the Plaintiff herein.

89.   The Defendants the City and the Commonwealth failed to competently and sufficiently hire, train and retain the various Defendants to conform and conduct themselves to a statute established by law for the protection of citizens, such as Plaintiff, against unreasonable risk of harm by conducting themselves in such a manner as not to intentionally, wantonly and/or negligently inflict injuries to citizens such as the Plaintiff herein.

90.   That on or about September 25, 2003, and prior thereto, the City and the Commonwealth, in violation of 42 U.S.C. § 1983 and Massachusetts law, caused the Plaintiff

to be injured and damaged in failing to competently hire, train and retain police officers, including but not limited to the defendant officers to conform and conduct themselves to a statute established by law for the protection of citizens, such as Plaintiff, against unreasonable risk of harm by conducting themselves in such a manner as not to intentionally, wantonly and/or negligently inflict injuries to citizens such as Plaintiff herein.

91.    That on or about September 25, 2003, and prior thereto, the Commonwealth, in violation of 42 U.S.C. § 1983 and Massachusetts law, caused the Plaintiff to be injured and damaged in failing to competently hire, train and retain the Defendants the Newton District Court, Magistrate Schultz, Magistrate McEvoy, and the Middlesex D.A. to conform and conduct themselves to a statute established by law for the protection of citizens, such as Plaintiff, against unreasonable risk of harm by conducting themselves in such a manner as not to intentionally, wantonly and/or negligently inflict injuries to citizens such as Plaintiff herein.

92. Immediately thereafter, aforementioned defendant Marini along with other agents, servants and employees of the Police Department prepared a false and improperly suggestive incident report (hereinafter "the report") relating to Marini's encounter with Mr. Cohen on Fellsmere Road (Incident Report Number 359046).  The Police Department then improperly, and without legal justification, sought a warrant for Mr. Cohen's arrest.

93.    Thereafter, the Defendants Magistrate Schultz, Magistrate McEvoy, and the Newton District Court direct contravention of the law and despite the absence of any probable cause to justify arrest, issued a warrant to arrest Mr. Cohen in an extra-judicial effort to further the police's illegitimate goal of arresting Mr. Cohen despite knowing he had not engaged in any criminal activity.

94.    Thereafter, the Defendants falsely arrested and imprisoned the Plaintiff and deprived him of his rights and liberties as set forth in the Constitutions of the United States and of the Commonwealth, unreasonably handcuffed him too tightly and threatened the Plaintiff with the use of physical force.

95.  Following said arrest, the Defendants wrongfully and falsely accused and charged the Plaintiff with violating M.G.L. c. 274, Section 6, Attempt to Commit A Crime, Breaking Into A Motor Vehicle.

96.  The false arrest and imprisonment of the Plaintiff was caused by all of the Defendants, their servants, agents and/or employees, without authority of law, or any reasonable cause or belief that he was, in fact, guilty of the crimes with which he was charged.

97.  As a result of the aforesaid arrest, Plaintiff was forcibly hand-cuffed, detained, transported and treated as a common criminal and incarcerated and imprisoned at a facilities owned, operated, maintained and controlled by the Defendant the City for several hours and thereby deprived of his rights, liberties and freedoms under color of State Law in violation of 42 U.S.C. §1983 and Massachusetts law.

98.  As a further result of the deprivation of Plaintiff's right to be free from the deprivation of rights guaranteed to him by the Fourteenth Amendment to the United States Constitution, he was caused to suffer injury and damage both mentally and physically, severe nervous shock and emotional distress and illness.

99.  On or about September 25, 2003, in violation of the rights, privileges and immunities guaranteed to him under the Fourteenth Amendment to the United States Constitution and under color of State law, the Defendant officers and each of them acting individually and in concert, in violation of 42 U.S.C. Section 1983 and Massachusetts law, while on duty, detained the Plaintiff, even though the Defendants knew or should have known that the Plaintiff was wholly innocent.

100.  All of the actions of all the Defendants, their agents, servants and/or employees were committed with the intention to cause bodily and mental injury to the Plaintiff; and to arrest, restrain and imprison the Plaintiff without his consent; to invade the Plaintiff's privacy. At all times, the Plaintiff was conscious of his arrest, did not consent to the assault, battery, and false arrest, and the assault, false arrest and imprisonment were not otherwise privileged.

101. The assault, battery, arrest and imprisonment of the Plaintiff were not justified by probable cause or other legal privilege and the Defendants, their agents, servants and/or employees acting under the color of statute, ordinances, regulations, customs and usages of the Commonwealth and The City and under the authority of their office as police officers, falsely charged the Plaintiff with violating M.G.L. c. 274, Section 6, Attempt to Commit A Crime, Breaking Into A Motor Vehicle, although the Defendants, acting in such capacity, knew that such charges were false.

102. The Defendants the City and the Commonwealth, their agents, servants and employees failed to adequately and properly hire, retain, train, supervise, discipline or in any other way control the behavior and performance of the said Defendants, their agents, servants and/or employees; that in their hiring practices in the exercise of their police functions and their failure to enforce the laws of the Commonwealth and The City is evidence of the reckless lack of cautious regard for the rights of the public, including Plaintiff; and that said Defendants exhibited a lack of that degree of due care which prudent and reasonable individuals would show in executing the duties of the said Defendants.

103. The Defendants the City and the Commonwealth, their agents, servants and/or employees failed to hire, train, supervise, discipline or in any other way control the defendant officers in the exercise of their functions. The said Defendants failure to enforce the laws of the Commonwealth and the City was and is carried out willfully, wantonly, maliciously and with such reckless disregard for the consequences so as to display a conscious disregard for the dangers of harm and injury to citizens of the Commonwealth and the City, including Plaintiff herein.

104. The said prosecution and criminal charges and hearings instituted and procured by the Defendants, their agents, servants and/or employees were unlawful and malicious and without any reasonable or probable cause whatsoever; that the commencement and/or continuation of the criminal proceedings by the Defendants against the Plaintiff was without probable cause with actual malice and terminated in favor of the Plaintiff.

16

105. That the Plaintiff was and is wholly innocent, and was forced by the Defendants to submit to court proceedings.

106. It was determined that the said charges were falsely and maliciously made. The Judge of the Newton District Court dismissed all charges against Plaintiff.

107. The said prosecution and criminal charges and hearings were instituted and procured by the Defendants, their agents, servants and/or employees unlawfully and maliciously and without any reasonable or probable cause whatsoever; that the commencement and/or continuation of the criminal proceedings by the Defendants against the Plaintiff were without probable cause, with actual malice and were terminated in favor of the Plaintiff.

108. By reason of the aforesaid unlawful and malicious prosecution, the Plaintiff was deprived of his liberty, was subjected to great indignity, humiliation, pain and great distress of mind and body and was held up to scorn and ridicule, was injured in his character and reputation, was prevented from attending his usual business and avocation, was injured in his reputation in the community and the said Plaintiff has been otherwise damaged.

109. Although Defendants knew or should have known of the fact that this pattern of conduct was carried out by their agents, servants and/or employees, the Defendants the City and the Commonwealth had not taken any steps or made any efforts to halt this course of conduct, to make redress to the Plaintiff or other citizens injured thereby, or to take any disciplinary action whatever against any of their employees, agents, or servants.

110. The unlawful and illegal conduct of the Defendants, their agents, servants and/or employees and each of them, deprived Plaintiff of the following rights, privileges and immunities secured to him by the Constitution of the United States and of the Commonwealth: The right of Plaintiff to be secure in his person and effects against unreasonable search and seizure under the Fourth and Fourteenth Amendments to the Constitution of the United States; the right of Plaintiff to be informed of the nature and cause of the accusation against him as secured to him under the Sixth and Fourteenth Amendments to the Constitution of the United States; and the right of

Plaintiff not to be deprived of life, liberty or property without due process of law, and the right to the equal protection of the laws secured by the Fourteenth Amendment to the Constitution of the United States.

111. That by reason of the foregoing, this Plaintiff was severely injured and damaged, rendered sick, sore, lame and disabled, sustained severe nervous shock and mental anguish, great physical pain and emotional upset, has suffered and continues to suffer serious and extreme mental and emotional anguish, distress and psychological damages and difficulties, some of which injuries are permanent in nature and duration, and Plaintiff will be permanently caused to suffer pain, inconvenience and other effects of such injuries; Plaintiff incurred and in the future will necessarily incur further hospital and/or medical expenses in an effort to be cured of said injuries; and Plaintiff has suffered and in the future will necessarily suffer additional loss of time and earnings from employment; and Plaintiff will be unable to pursue the usual duties with the same degree of efficiency as prior to this occurrence, all to Plaintiff's great damage.

WHEREFORE, the Plaintiff prays for judgment against the Defendants for damages and costs.

## COUNT II
### False Arrest/Imprisonment

112. The Plaintiff repeats and realleges the paragraphs 1 through 111 as if set forth fully herein.

113. On or about September 23, 2004, the Plaintiff was lawfully on Fellsmere Road, Newton, Massachusetts.

114. The Defendants Marini and the Newton Police maliciously and intentionally created a false incident report which falsely alleged that Mr. Cohen had been attempting to break into a motor vehicle.

115. The Newton Police obtained an arrest warrant under false pretenses and the Newton District Court and the Defendant Magistrates issued said warrant in violation of the law.

116. Sampson, McMains, and the Newton Police arrested and imprisoned Mr. Cohen without cause and/or justification.

117. The Plaintiff was wholly innocent of the said criminal charges and did not contribute in any way to the conduct of the Defendants, their agents, servants and/or employees and was forced by the Defendants to submit to the aforesaid arrest and imprisonment thereto entirely against his will.

118. As a result of the aforesaid accusations made by the Defendants, their agents, servants and/or employees acting under their employment and within the scope of their authority, made falsely, publicly, wickedly and maliciously, the Plaintiff was compelled to appear before a Judge of the Newton District Court, to be arraigned.

119. That the Defendants, their agents, servants and employees, as set forth on the aforementioned date, time and place, intended to confine the Plaintiff; in that the Plaintiff was conscious of the confinement; Plaintiff did not consent to the confinement; and that the confinement was not otherwise privileged.

120. That by reason of the false arrest, imprisonment and detention of the Plaintiff, Plaintiff was subjected to great indignities, humiliation and ridicule, in being so detained, charged and prosecuted with various crimes, and greatly injured in his credit and circumstances and was then and there prevented and hindered from performing and transacting his necessary affairs and business and he was caused to suffer much pain in both mind and body, the loss of employment and the loss of employment opportunities.

121. That by reason of the foregoing, this Plaintiff was severely injured and damaged, rendered sick, sore, lame and disabled, sustained severe nervous shock and mental anguish, great physical pain and emotional upset, has suffered and continues to suffer serious and extreme mental and emotional anguish, distress and psychological damages and difficulties, some of which injuries are permanent in nature and duration, and Plaintiff will be permanently caused to suffer pain, inconvenience and other effects of such injuries; Plaintiff incurred and in the future will necessarily incur further hospital and/or medical expenses in an effort to be cured of said injuries; and Plaintiff

has suffered and in the future will necessarily suffer
additional loss of time and earnings from employment; and
Plaintiff will be unable to pursue the usual duties with
the same degree of efficiency as prior to this occurrence,
all to Plaintiff's great damage.

WHEREFORE, the Plaintiff prays for judgment against
the Defendants for damages and costs.

## COUNT III

### Malicious Prosecution

122. The Plaintiff repeats and realleges the
paragraphs 1 through 121 as if set forth fully herein.

123. On or about September 23, 2004, the Plaintiff was
lawfully on Fellsmere Road, Newton, Massachusetts.

124. The Defendants Marini and the Newton Police
maliciously and intentionally created a false incident
report which falsely alleged that Mr. Cohen had been
attempting to break into a motor vehicle.

125. The Newton Police obtained an arrest warrant
under false pretenses and the Newton District Court and the
Magistrates issued said warrant in violation of the law.

126. Sampson, McMains, and the Police Newton arrested
and imprisoned Mr. Cohen without cause and/or
justification.

127. At all relevant times Marini, Sampson, McMains
and the Newton Police were acting in their capacity as
police officers and their actions were the result of the
customs, policies, and practices of the Newton Police, the
City, and the Commonwealth.

128. That the Plaintiff was and is wholly innocent,
and was forced by the Defendants to submit to court
proceedings.

129. That the Defendants, their agents, servants
and/or employees, falsely and maliciously and without
probable cause or provocation charged the Plaintiff with a
crime under M.G.L. c. 274, Section 6, Attempt to Commit A
Crime, Breaking Into A Motor Vehicle.

20

130. That the Defendants, their agents, servants and/or employees acting in the performance of their employment and within the scope of their authority, testified falsely and withheld vital information before the Magistrates and a Judge of the Newton District Court.

131. That upon examination, the said charges were falsely and maliciously made and the Judge of the Newton District Court dismissed all charges against Plaintiff, despite the objection of the Middlesex D.A.

132. The said prosecution and criminal charges and hearings were instituted and procured by the Defendants, their agents, servants and/or employees unlawfully and maliciously and without any reasonable or probable cause whatsoever; that the commencement and/or continuation of the criminal proceedings by the Defendants against the Plaintiff was without probable cause, with actual malice and was terminated in favor of the Plaintiff.

133. That by reason of the aforesaid unlawful and malicious prosecution, the Plaintiff was deprived of his liberty, was subjected to great indignity, humiliation, pain and great distress of mind and body and was held up to scorn and ridicule, was injured in his character and reputation, was prevented from attending his usual business and vocation, was injured in his reputation in the community and the said Plaintiff has been otherwise damaged.

WHEREFORE, the Plaintiff prays for judgment against the Defendants for damages and costs.

## COUNT IV
### (ASSAULT AND BATTERY)

134. The Plaintiff repeats and realleges the paragraphs 1 through 133 as if set forth fully herein.

135.     On or about September 25, 2003, the Plaintiff, Mr. Cohen, was lawfully and properly present in the vicinity of Ward Street and Fellsmere Road, Newton, Massachusetts.

136. The force used in the course of Mr. Cohen's arrest by the Defendants the Newton Police, Sampson, and

McMains was excessive, unnecessary, unwarranted and violent.

137. As a result of the defendant officer's aforementioned assault and battery of the Plaintiff has been damaged.

WHEREFORE, the Plaintiff prays for judgment against the Defendants for damages and costs.

## COUNT V
### (COMMON LAW NEGLIGENCE)

138. The Plaintiff repeats and realleges the paragraphs 1 through 137 as if set forth fully herein.

139. The Defendants The City and the Commonwealth were negligent in its operation, management, supervision and control of the Newton Police, the Magistrates, the Newton District Court, and the Middlesex D.A.; in not providing adequate training of defendant police officers while at the Police Academy; in their supervision of Defendant police officers while assigned to precincts; in failing to provide adequate supervision of Defendant police officers during their training at the Police Academy; in not providing adequate training and/or supervision to the Magistrates, the Newton District Court and/or the Middlesex D.A.

140. The individual Defendants were negligent in failing to use reasonable care in the detainment and confinement of the Plaintiff on or about September 25, 2003.

141. That by reason of the foregoing, this Plaintiff was severely injured and damaged, rendered sick, sore, lame and disabled, sustained severe nervous shock and mental anguish, great physical pain and emotional upset, has suffered and continues to suffer serious and extreme mental and emotional anguish, distress and psychological damages and difficulties, some of which injuries are permanent in nature and duration, and Plaintiff will be permanently caused to suffer pain, inconvenience and other effects of such injuries; Plaintiff incurred and in the future will necessarily incur further hospital and/or medical expenses in an effort to be cured of said injuries; and Plaintiff has suffered and in the future will necessarily suffer additional loss of time and earnings from employment; and

Plaintiff will be unable to pursue the usual duties with the same degree of efficiency as prior to this occurrence, all to Plaintiff's great damage.

### COUNT VI
### (VIOLATION OF INDIVIDUAL'S RIGHT TO BE FREE FROM UNREASONABLE SEARCHES AND SEIZURES UNDER THE CONSTITUTION OF THE COMMONWEALTH)

142.    The Plaintiff repeats and realleges the paragraphs 1 through 141 as if set forth fully herein.

143.    On or about September 25, 2003, the Plaintiff, Mr. Cohen, was lawfully and properly present in the vicinity of Ward Street and Fellsmere Road, Newton, Massachusetts.

144. In violation of the rights, privileges and immunities guaranteed to him under the Constitution of the Commonwealth, the Plaintiff was unlawfully seized by the defendant police officers and/or others acting in concert with them, when said defendant police officers and/or others acting in concert with them, and each of them acting individually and in concert, while on duty, detained the Plaintiff, even though the Defendants knew or should have known that the Plaintiff was wholly innocent.

145. That by reason of the foregoing, this Plaintiff was severely injured and damaged, rendered sick, sore, lame and disabled, sustained severe nervous shock and mental anguish, great physical pain and emotional upset, has suffered and continues to suffer serious and extreme mental and emotional anguish, distress and psychological damages and difficulties, some of which injuries are permanent in nature and duration, and Plaintiff will be permanently caused to suffer pain, inconvenience and other effects of such injuries; Plaintiff incurred and in the future will necessarily incur further hospital and/or medical expenses in an effort to be cured of said injuries; and Plaintiff has suffered and in the future will necessarily suffer additional loss of time and earnings from employment; and Plaintiff will be unable to pursue the usual duties with the same degree of efficiency as prior to this occurrence, all to Plaintiff's great damage.

WHEREFORE, the Plaintiff prays for judgment against the Defendants for damages, reasonable attorney's fees, and costs.

THE PLAINTIFF CLAIMS A TRIAL BY JURY ON ALL MATTERS SET FORTH HEREIN.

Respectfully submitted,
Plaintiff,
Barry M. Cohen
By his attorney,

Christopher W. McHallam
BBO #637464
500 Commercial Street
Suite 4R
Boston, Massachusetts 02109
(617) 523-4552

# EXHIBIT B

UNITED STATES OF AMERICA
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
                                      )

Barry M. Cohen,               )
                                      )

      Plaintiff,              )
                                       )

      v.                      )      Civil Action No.:
                                       )      05-11727-DPW

The City of Newton, The Newton   )
Police Department,          )
Police Chief Jose M. Cordero,    )
Newton Police Officer Rocky Marini )
(Badge No. 13963),          )
Newton Police Detective Robert F.   )
Sampson, Newton Police Detective   )
Sergeant George McMains,      )
Newton Police Officer Zachary     )
Raymond and Newton Police Officer   )
Joseph T. McLaughlin,       )
                                       )

      Defendants.            )
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## PLAINTIFF'S ANSWERS TO DEFENDANTS, CITY OF NEWTON, CITY OF NEWTON POLICE DEPARTMENT, AND NEWTON POLICE OFFICERS FIRST SET OF INTERROGATORIES

     NOW COMES the Plaintiff, Barry M. Cohen (hereinafter

"Mr. Cohen"), pursuant to Fed.R.Civ.P. Rules 26 and 33 and

hereby submits the within answers to Defendants'

Interrogatories and states as follows:

     The Plaintiff objects to the Defendant's

Interrogatories on the general basis that same seek to

discover information which is 1) protected by the attorney-

client privilege and/or the work product doctrine; 2)

unduly burdensome to respond; 3) beyond the scope of

discovery as defined by Fed.R.Civ.P. Rule 26(a); and/or 4)
is otherwise confidential and/or privileged.

Notwithstanding any general objection, the Plaintiff
answers as follows:

## ANSWERS TO SPECIFIC INTERROGATORIES

### Interrogatory No. 1

Please identify yourself fully, setting forth your name,
date of birth, social security number, residential address,
and current occupation.

### Answer to No. 1

Barry M. Cohen, 87 Hammond Street, Chesnut Hill,
Massachusetts, 12/01/1961; acting student.

### Interrogatory No. 2

Please identify and describe each instance of emotional
distress and psychological damage that you claim was caused
by the Defendants including dates and symptoms.

### Answer to No. 2

The Plaintiff has suffered, and continues to suffer,
injury, illness, emotional and physical distress, and harm
as a direct and proximate result of the Defendants'
conduct.

It should be noted that Mr. Cohen has suffered from
Obsessive-Compulsive Disorder (hereinafter "OCD") for many
years, and was suffering from said illness at the time of

the incidents described herein. Mr. Cohen's OCD impairs his ability to lead a normal life and causes Mr. Cohen to suffer significant distress on an almost daily basis.

Mr. Cohen's OCD causes him to be daily concerned with fears and anxiety, including fears of being touched by others, fears of being poisoned and/or contaminated by toxins. Thus, Mr. Cohen wears gloves on a daily basis, and often wears galoshes, in order to avoid contact between him and the environment. Mr. Cohen has been wearing gloves on a daily basis for approximately the past fifteen years and had been wearing gloves regularly for several years prior.

Thus, the distress and shock associated with Mr. Cohen's false arrest, false imprisonment, and subsequent malicious prosecution were especially difficult and traumatizing for Mr. Cohen due to his OCD and general physical and psychological vulnerability. It should be noted, however, that Mr. Cohen was initially in a state of shock and fright having been knowingly arrested without any reason or justification, and thus had good reason to believe that he might be harmed.

The Plaintiff was terrified and distraught throughout the course of his false arrest and false imprisonment as he was subjected to physical and emotional abuse by Defendants and believed he was in extreme danger.

Throughout the Plaintiff's ordeal, he was deliberately caused to believe that he might be imprisoned indefinitely, without hope of any outside contact, and Mr. Cohen feared that he might be further personally violated, badly injured, or even killed while imprisoned.

Moreover, Mr. Cohen was subjected to various forms of psychological torture, humiliation, and intimidation throughout the duration of his false arrest and imprisonment.

There were many incidents during Mr. Cohen's false arrest and false imprisonment which were traumatizing and damaging, including, but not limited to, the following:  he was purposefully led to believe by Defendants that he might be subjected to a body cavity search; was repeatedly and unnecessarily frisked; had both wrists handcuffed to a steel pipe and was assaulted while handcuffed by both wrists to said pipe; was required to undress in front of others;; was subjected to verbal abuse and hostility; and was repeatedly harassed and intimidated.

Mr. Cohen's sudden and unanticipated injection into the environment of the police squad cars, police station, and cell block area created tremendous distress and anxiety for Mr. Cohen.

One of the many aspects of his false arrest and false imprisonment that was especially disconcerting and traumatizing for Mr. Cohen was having his hands forcibly manipulated and unwillingly placed in ink in connection with his fingerprinting. Moreover, Mr. Cohen suffered injuries to his wrists as a direct and proximate result of the Defendants' excessive force. Thus, Mr. Cohen was fearful that he might have been unwillingly and unnecessarily exposed to infection and/or disease.

Thereafter, Mr. Cohen suffered and continues to suffer emotional terror, trauma, anxiety, and distress as a result of the Defendants' conduct.

In the weeks immediately following the incident, Mr. Cohen had great difficulty sleeping, suffered recurrent nightmares, experienced difficulty eating and digesting food, and was in a state of great distress and terror. Mr. Cohen suffered from anxiety of a disabling nature and was unable to engage in the activities he had prior to the incident.

As the result of the publication of the notice of his arrest in the Newton Tab, Mr. Cohen (a thirty year resident of Newton) has suffered the extreme humiliation of being associated with criminal activity and, thus, significant damage to his reputation. This humiliation has caused a

worsening of Mr. Cohen's social anxiety and has caused a further withdrawal from social situations.

Since the time of the incident, it has been, and continues to be, difficult for Mr. Cohen to leave his parent's home due to his fears and anxieties. Moreover, Mr. Cohen has been chronically fearful.

Due to his fears and anxieties, Mr. Cohen has been deprived of the ability to engage in his typical source of exercise and activity, to wit: evening walks.

Subsequent to the incident, Mr. Cohen became fearful of driving a car by himself due to anxiety that he would again be subject to false arrest and/or police harassment.

Since the incident, Mr. Cohen has been fearful that he has been followed by the police; has been placed under surveillance; and otherwise has suffered persecutory anxiety.

Inasmuch as the Court's dismissal of the criminal case against Mr. Cohen was "without prejudice" and the District Attorney objected to said dismissal, Mr. Cohen feared that the police would again falsely arrest and/or continue to harass him. Moreover, Mr. Cohen was deeply traumatized by the fact that the police had misrepresented, in writing, the nature of his conduct on the night of the incident.

Moreover, at the time of the incident, Mr. Cohen had been residing by himself in an apartment in New York City since 2000, and was studying and pursuing a career in acting.  Mr. Cohen has been unable to return to his New York apartment since the time of the incident, due to his increased fears, increased anxieties, and the exacerbation of his OCD, which symptoms were directly and proximately caused by the Defendants' conduct.  Also, Mr. Cohen has been unable to resume his pursuit of a career in acting.

Since the time of the incident, Mr. Cohen has experienced a worsening and exacerbation of the following symptoms and conditions:  persecutory anxiety; fear of being alone; continual distress and anxiety; anorexia with weight loss; gastrointestinal distress; depression; demoralization; pleasurelessness; negative associations and intrusive memories; compulsive re-living of the incident; fatigue; lethargy; humiliation and embarrassment of being associated with criminal activity; worsened social anxiety and withdrawal; increased feelings of isolation; insomnia due to nightmares and fitful dreams involving the arrest and legal proceedings; fear of being arrested and/or falsely accused of further crimes and/or wrongdoing; hyper-vigilance; an exacerbation of the symptoms related to his OCD, including, but not limited to, a heightening of

obsessive concern; and has otherwise been and continues to be psychologically and physically injured.

The Plaintiff reserves the right to supplement this response.

**Interrogatory No. 3**

Please identify every health care provider, including but not limited to hospitals, clinics, physicians, psychologists, mental health therapists, vocational therapists, and/or home health aides, with whom you consulted or who rendered treatment to you as a result of the purported incidents referred to in your Complaint, including the dates upon which such consultations or treatments were rendered, and the purpose of such consultations or treatments.

**Answer to No. 3**

Since the date of the incident, Mr. Cohen has been receiving treatment by Jay Press, M.D., a psychiatrist with respect to his OCD and the emotional injuries suffered as described herein. Mr. Cohen has twice weekly sessions with Dr. Press.

The Plaintiff reserves the right to supplement this response as his medical treatment is ongoing.

**Interrogatory No. 4**

Please identify all medications you were prescribed as a result of the purported incidents referred to in your Complaint.

**Answer to No. 4**

Mr. Cohen is not presently taking any medication. The Plaintiff reserves the right to supplement this response.

**Interrogatory No. 5**

Please identify all health care providers, including but not limited to hospitals, clinics, physicians, psychologists, mental health therapists, vocational therapists, and/or home health aides, with whom you consulted or who rendered treatment to you from January 1980 to present, including the dates upon which such consultations or treatments were rendered, and the purposes of such consultations or treatments.

**Answer to No. 5**

Objection. This interrogatory is overly broad, unduly burdensome and seeks to discover information which is beyond the scope of discovery as defined by Fed.R.Civ.P. Rule 26(a). Notwithstanding said objection and without waiving same, Mr. Cohen has received ongoing psychiatric treatment for anxiety and emotional distress throughout

much of his life.  During the mid 1990s, Mr. Cohen received
treatment from Dr. Matthew Luzzi.

The Plaintiff reserves the right to supplement this
response.

## Interrogatory No. 6

Please identify by name, business address, and professional
qualifications each person whom you expect to call as an
expert witness at trial and as to each such person state:
the nature of his or her area of specialization; the
subject matter on which he or she is expected to testify; a
summary of the grounds for each opinion; the facts upon
which you rely to qualify each such person as an expert;
and all documents or other information upon which such
expert relies or to which he or she makes reference in his
or her opinion.

## Answer to No. 6

The Plaintiff has not made any determination as to the
calling of expert witnesses at this juncture.  Plaintiff
reserves the right to supplement this response.

Respectfully submitted,
Plaintiff,
Barry M. Cohen,
By his attorney,

Christopher W. McHallam
BBO # 637464
500 Commercial Street
Suite 4R
Boston, Massachusetts 02109
(617) 523-4552

## VERIFICATION

I, Barry M. Cohen, hereby acknowledge that I have read the foregoing answers to interrogatories and believe same to be true and accurate to the best of my knowledge.

_____
Barry M. Cohen

EXHIBIT C

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BARRY M. COHEN,<br>       Plaintiff<br><br>v.<br><br>THE CITY OF NEWTON, THE NEWTON<br>POLICE DEPARTMENT, POLICE CHIEF<br>JOSE M. CORDERO, NEWTON POLICE<br>OFFICER ROCKY MARINI, (BADGE NO.<br>13963) NEWTON POLICE DETECTIVE<br>ROBERT F. SAMPSON, NEWTON POLICE<br>POLICE DETECTIVE, NEWTON POLICE<br>DETECTIVE SERGEANT GEORGE<br>MCMAINS, NEWTON POLICE OFFICER<br>ZACHARY RAYMOND, NEWTON<br>POLICE OFFICER JOSEPH T. MCLAUGHLIN,<br>THE NEWTON DIVISION OF THE DISTRICT<br>COURT DEPARTMENT OF THE TRIAL<br>COURT, HENRY H. SCHULTZ, CLERK<br>MAGISTRATE, WILLIAM A. MCEVOY, JR.,<br>ASSISTANT CLERK MAGISTRATE,<br>MIDDLESEX DISTRICT ATTORNEY'S<br>OFFICE, AND THE COMMONWEALTH<br>OF MASSACHUSETTS,<br>       Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION<br>NO. 05-11727 DPW |

**DEFENDANTS CITY OF NEWTON, CITY OF NEWTON
POLICE  DEPARTMENT, AND CITY OF NEWTON'S POLICE
OFFICERS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS**

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendants, City of Newton,

Newton Police Department, Police Chief Jose M. Cordero, Police Officer Rocky Marini,

Detective Robert F. Sampson, Detective Sergeant George McMains, Police Officer Zachary

Raymond, and Police Officer Joseph McLaughlin, (together the "Newton Defendants")  hereby

request Plaintiff to produce at the offices of the City of Newton, Law Department, 1000

Commonwealth Avenue, Newton, MA, within 30 days of the date of this request, the following

documents or tangible things as are in the possession, custody or control of Plaintiff, his agents,

servants, employees, or attorneys.

## DEFINITIONS

1. The term "you" or "your" shall mean Plaintiff Barry M. Cohen and each of his agents,

attorneys, and any others who have or are now acting or purporting to act for or on behalf of

Barry M. Cohen.

2. The term "Complaint" shall mean the complaint filed by you in the above-captioned

action.

3. The term "document" means any printed, written, typed, recorded, transcribed, taped,

photographic, or graphic matter, however produced or reproduced, including but not limited to:

any letter, correspondence, or communication of any sort; film, print or negative of photograph;

sound recording, video recording; note, notebook, diary, calendar, minutes, memorandum,

contract, agreement, or any amendment thereto; telex, telegram, cable, summary, report or record

of telephone conversation, personal conversation, discussion, interview, meeting, conference,

investigation, negotiation, act or activity; projection, work paper, or draft; computer output or

input, data processing card; opinion or report of consultant; request, order, invoice or bill of

lading; analysis, diagram, map, index, sketch, drawing, plan, chart, manual, brochure, pamphlet,

advertisement, circular, news paper or magazine clipping, press release; receipt, journal, ledger,

schedule, bill or voucher; financial statement, statement of account, bank statement, check book,

stubs, or register, cancelled check, deposit slip, charge slip, tax return (income or other),

requisition; file, study, graph, tabulation, and any and all other writings and recordings of

whatever nature, whether signed or unsigned or transcribed, and any other date compilation from

which information can be obtained, translated, if necessary, by the respondent through detection

devices into reasonably usable form.

2

4.  The term "document" also means (a) the original and/or any non-identical original or copy including those with any marginal note or comment, or showing additions, deletions, or substitutions; (b) drafts; (c) attachments to or enclosure with any document and (d) every document referred to in any other documents.

5.  The term "person" shall mean all natural persons and all business entities of any kind, including, but not limited to corporations, unincorporated associations, business trusts, or other entities separately identified, no matter how organized.

6.  The term "concerning to" as used herein shall mean referring to, describing, evidencing, or constituting.

7.  The term "each" shall mean to include the word "every", and the term "every" includes the word "each"; "any" shall mean to include the word "all" and "all" includes the word "any"; "and" shall mean to include the word "or", and "or" includes the word "and".

## INSTRUCTIONS

1.  Each request shall be deemed continuing and, in the event that at any time between the responding of any request and the date of the trial of this matter you shall acquire additional documents or information responsive to any request, please file supplemental responses containing such additional documents or information.

2.  If an objection is made to any request contained herein, for each item or category objected to:

    a.  state the specific ground for each objection;

    b.  identify each such document by giving its date, the name of each author (and each addressor, if different), the name of each addressee (and each recipient, if different), and by giving any other information necessary to identify such document or part thereof; and

    c.  provide a description of the subject matter of each document or item.

## DOCUMENTS TO BE PRODUCED

1.    All documents relating to physical, mental and emotional damages allegedly sustained by you as a result of the alleged incidents referred to in your Complaint including. but not limited to:

      (a)    all hospital reports and other hospital documents; and

      (b)    reports. evaluations or notes from treatment by private physicians, therapists or other health care providers.

2.    All documents relating to your physical, mental and emotional condition from 1980 to the present, including but not limited to:

      (a)    all hospital reports and other hospital documents; and

      (b)    reports, evaluations, or notes from treatment by private physicians, therapists or other health care providers.

3.    All statements of witnesses to the alleged incidents referred to in the Complaint.

4.    All documents which refer or relate to any witnesses to the alleged incidents referred to in the Complaint.

5.    All documents in which you recorded the purported events alleged in the Complaint.

6.    All expert reports.

7.    All documents which you rely upon to support the allegations set forth in the Complaint.

8.  All documents which you intend to introduce at the trial of this matter.

DEFENDANTS,

THE CITY OF NEWTON, THE NEWTON
POLICE DEPARTMENT, POLICE CHIEF
JOSE M. CORDERO, NEWTON POLICE
OFFICER ROCKY MARINI, NEWTON
POLICE DETECTIVE ROBERT F.
SAMPSON, NEWTON POLICE
DETECTIVE SERGEANT GEORGE
MCMAINS, NEWTON POLICE
OFFICER ZACHARY RAYMOND,
NEWTON POLICE OFFICER JOSEPH T.
MCLAUGHLIN,

By their attorneys,

Donnalyn B. Lynch Kahn (BBO #556609)
Angela B. Smagula (BBO #643764)
Assistant City Solicitors
City of Newton Law Department
1000 Commonwealth Avenue
Newton Centre, MA 02459
Tel: (617) 796-1240

**CERTIFICATE OF SERVICE**
I hereby certify that a true copy of the above
document was served upon the attorney(s) of
record for each other party by mail/hand/fax
on _December 6, 2005_
_____
ANGELA B. SMAGULA

Dated:    December 6, 2005

EXHIBIT D

LA,    DEPARTMENT



# CITY OF NEWTON, MASSACHUSETTS

## CITY HALL
1000 COMMONWEALTH AVENUE
NEWTON CENTRE, MA 02459
TELEPHONE (617) 796-1240
FACSIMILE (617) 796-1254

CITY SOLICITOR
**DANIEL M. FUNK**

ASSOCIATE CITY SOLICITORS
OUIDA C.M. YOUNG    GAYLE A. SMALLEY

ASSISTANT CITY SOLICITORS

RICHARD G. CHMIELINSKI
DONNALYN B. LYNCH KAHN
EILEEN M. MCGETTIGAN
CATHERINE L. FARRELL
MARIE M. LAWLOR
ANGELA B. SMAGULA

January 5, 2006

## BY FACSIMILE @ 617-723-9211 AND 508-533-0778 AND FIRST CLASS MAIL

Christopher W. McHallam, Esquire
500 Commercial Street
Suite 4R
Boston, Massachusetts 02109

   Re:  *Barry M. Cohen v. City of Newton, et al.*
      United States District Court: Civil Action Number 05-11727DPW

Dear Christopher:

This letter confirms that the City of Newton has agreed to your request for additional time to respond to pending discovery originally due on January 6, 2006.

I look forward to receipt of plaintiff's responses by January 13, 2006.

Sincerely,

Angela B. Smagula
Assistant City Solicitor

ABS/dab

# CHRISTOPHER W. McHALLAM
## ATTORNEY AT LAW
### 500 COMMERCIAL STREET
### BOSTON, MASSACHUSETTS 02109

Telephone:   (617) 523-4552                    Facsimile (617) 723-9211

January 17, 2006

**VIA FACSIMILE AND FIRST-CLASS MAIL**

Angela Buchanan Smagula, Esq.
City Solicitor's Office
City of Newton
City Hall
1000 Commonwealth Avenue
Newton, Massachusetts 02459

> Barry M. Cohen v. City of Newton, et al.
> United States District Court
> District of Massachusetts
> Civil Action No. 05-11727-DPW

Dear Ms. Smagula:

This letter confirms our conversation of today wherein it was indicated that the Plaintiff's responses to the City of Newton's discovery requests will be completed and sent to your attention by January 18, 2006.

Your courtesy in this matter is appreciated.

Very truly yours,

Christopher W. McHallam

Cc:  Barry M. Cohen

# EXHIBIT E

UNITED STATES OF AMERICA
DISTRICT OF MASSACHUSETTS

---------------------------------
                                  )
Barry M. Cohen,                   )
                                  )
      Plaintiff,                  )
                                  )
      v.                          )      Civil Action No.:
                                  )      05-11727-DPW
The City of Newton, The Newton    )
Police Department,                )
Police Chief Jose M. Cordero,     )
Newton Police Officer Rocky Marini)
(Badge No. 13963),                )
Newton Police Detective Robert F. )
Sampson, Newton Police Detective  )
Sergeant George McMains,          )
Newton Police Officer Zachary     )
Raymond and Newton Police Officer )
Joseph T. McLaughlin,             )
                                  )
      Defendants.                 )
---------------------------------

## PLAINTIFF'S RESPONSE TO DEFENDANTS, CITY OF NEWTON, CITY OF NEWTON POLICE DEPARTMENT, AND NEWTON POLICE OFFICERS FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS

NOW COMES the Plaintiff, Barry M. Cohen (hereinafter

"Mr. Cohen"), pursuant to Fed.R.Civ.P. Rules 26 and 34 and

hereby submits the within responses to Defendants' Requests

for the Production of Documents and states as follows:

The Plaintiff objects to the Defendants' Requests for

the Production of Documents on the general basis that same

seek to discover information which is 1) protected by the

attorney-client privilege and/or the work product doctrine;

2) unduly burdensome to respond; 3) beyond the scope of

discovery as defined by Fed.R.Civ.P. Rule 26(a); and/or 4) is otherwise confidential and/or privileged.

Notwithstanding any general objection, the Plaintiff responds as follows:

## RESPONSES TO SPECIFIC REQUESTS FOR PRODUCTION

### Request No. 1

All documents relating to physical, mental, and emotional damages allegedly sustained by you as a result of the alleged incidents referred to in your Complaint including, but not limited to:

(a)  all hospital reports and other hospital documents; and

(b)  reports, evaluations, or notes from treatment by private physicians, therapists, or other health care providers.

### Response to No. 1

The Plaintiff is in the process of gathering said medical records and will provide same as soon as practicable. Plaintiff reserves the right to supplement this response.

### Request No. 2

All documents relating to your physical, mental, and emotional condition from 1980 to the present, including, but not limited to:

(a)  all hospital reports and other hospital documents; and

(b)  reports, evaluations, or notes from treatment by private physicians, therapists, or other health care providers.

## Response to No. 2

Objection.  This request is overly broad, unduly burdensome, and seeks to discover information beyond the scope of discovery as defined by Fed.R.Civ.P. 26(a) and 24. Notwithstanding said objection and without waiving same, the Plaintiff will provide any such records in his possession, custody, or control which relate to the damages claimed in his Complaint.

The Plaintiff reserves the right to supplement this response.

## Request No. 3

All statements of witnesses to the alleged incidents referred to in the Complaint.

## Response to No. 3

Plaintiff has no such documents in his possession, custody, or control.  Plaintiff reserves the right to supplement this response.

Request No. 4

All documents which refer or relate to any witnesses to the alleged incidents referred to in the Complaint.

Response to No. 4

See response to No. 3.

Request No. 5

All documents in which you recorded the purported events alleged in the Complaint.

Response to No. 5

Objection.  This request seeks to discover information which, to the extent any such information exists, may be protected by the attorney-client privilege.

The Plaintiff reserves the right to supplement this response.

Request No. 6

All expert reports.

Response to No. 6

The Plaintiff has not made any determination as to the calling of expert witnesses at this juncture and thus no such expert reports exist.  Plaintiff reserves the right to supplement this response.

Request No. 7

All documents which you rely upon to support the allegations set forth in the complaint.

**Response to No. 7**

See attached documents.  Plaintiff reserves the right to
supplement this response.

                          Respectfully submitted,
                          Plaintiff,
                          Barry M. Cohen,
                          By his attorney,



                          _____
                          Christopher W. McHallam
                          BBO # 637464
                          500 Commercial Street
                          Suite 4R
                          Boston, Massachusetts 02109
                          (617) 523-4552

# EXHIBIT F

LAW DEPARTMENT



**CITY OF NEWTON, MASSACHUSETTS**
CITY HALL
1000 COMMONWEALTH AVENUE
NEWTON CENTRE, MA 02459
TELEPHONE (617) 796-1240
FACSIMILE (617) 796-1254

CITY SOLICITOR
DANIEL M. FUNK

ASSOCIATE CITY SOLICITORS
OUIDA C.M. YOUNG      GAYLE A. SMALLEY

ASSISTANT CITY SOLICITORS

RICHARD G. CHMIELINSKI
DONNALYN B. LYNCH KAHN
EILEEN M. MCGETTIGAN
CATHERINE L. FARRELL
MARIE M. LAWLOR
ANGELA B. SMAGULA

February 10, 2006

**BY FACSIMILE @ (617)-723-9211 AND (508)-533-0778 AND FIRST CLASS MAIL**

Christopher W. McHallan, Esquire
500 Commercial Street
Suite 4R
Boston, Massachusetts 02109

> Re:     *Barry M. Cohen v. City of Newton, et al.*
>           United States District Court; Civil Action Number 05-11727DPW

Dear Christopher:

I am in receipt of plaintiff's response to the City of Newton's First Set of Document Requests and First Set of Interrogatories. I note that the response to the Interrogatories have arrived a full three weeks after the twice extended date I had agreed to at your request.

As to the documents produced, you have stated that you will "provide as soon as practicable" documents responsive to Request No. 1, concerning medical documents relating to physical, mental and emotional damages sustained by your client. Three weeks have passed since I received this response, but to date I have not received any additional documents responsive to this request. This is unacceptable, considering the discovery schedule the parties are operating under. Please produce these documents immediately.

Additionally, although you have objected to Request No. 2, you stated that you will provide documents that relate to Mr. Cohen's alleged damages. As you know, Mr. Cohen purports that his long-standing Obsessive Compulsive Disorder ("OCD") and a myriad of additional anxiety and emotional disorders were exacerbated by the defendants. Consequently, our request for medical documents and records concerning his physical, mental and emotional condition from before the incident are relevant and not overly broad. Please produce documents responsive to this request immediately. As you know, discovery ends on April 28, 2006 and we require documents responsive to both Request Nos. 1 and 2 before Mr. Cohen's deposition.

Christopher W. McHallan, Esquire
February 10, 2006
Page Two

Similarly, your response to Interrogatory No. 5 is incomplete, and your objection therein has no
sound basis. This Interrogatory properly requests the identification of Mr. Cohen's health care
providers before the incident, including the dates and purpose of visits. Again, this information
is relevant because of Mr. Cohen's assertion that he has suffered from OCD and his other anxiety
and emotional disorders "throughout most of his life" and that these conditions have been
"exacerbated" and "worsened" since the incident at the center of this lawsuit. See Plaintiff
Response to Interrogatory No. 2. In your response, you have only provided the name of one
doctor, Dr. Luzzi, from whom Mr. Cohen received treatment from in the "mid-90's." This
response is grossly insufficient, as information concerning Mr. Cohen's condition and treatment
both before that time period, and most significantly in the years leading up to this incident are
both relevant and responsive. Please supplement your answer to Interrogatory No. 5
immediately.

Please contact me if you would like to discuss these discovery matters further. If documents and
supplementary answers are not forthcoming by February 24, 2006, I will be filing a motion to
compel. Please consider this correspondence to be a Local Rule 37.1 communication.

Sincerely,

Angela B. Smagula
Assistant City Solicitor

ABS/dab

EXHIBIT G

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BARRY M. COHEN,<br>　　　　　Plaintiff<br><br>v.<br><br>THE CITY OF NEWTON, THE NEWTON<br>POLICE DEPARTMENT, POLICE CHIEF<br>JOSE M. CORDERO, NEWTON POLICE<br>OFFICER ROCKY MARINI, (BADGE NO.<br>13963) NEWTON POLICE DETECTIVE<br>ROBERT F. SAMPSON,  NEWTON POLICE<br>POLICE DETECTIVE, NEWTON POLICE<br>DETECTIVE SERGEANT GEORGE<br>MCMAINS, NEWTON POLICE OFFICER<br>ZACHARY RAYMOND, NEWTON<br>POLICE OFFICER JOSEPH T. MCLAUGHLIN,<br>THE NEWTON DIVISION OF THE DISTRICT<br>COURT DEPARTMENT OF THE TRIAL<br>COURT, HENRY H. SCHULTZ, CLERK<br>MAGISTRATE, WILLIAM A. MCEVOY, JR.,<br>ASSISTANT CLERK MAGISTRATE,<br>MIDDLESEX DISTRICT ATTORNEY'S<br>OFFICE, AND THE COMMONWEALTH<br>OF MASSACHUSETTS,<br>　　　　　Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)　　CIVIL ACTION<br>　　NO. 05-11727 DPW |

**DEFENDANTS CITY OF NEWTON, CITY OF NEWTON
POLICE  DEPARTMENT, AND CITY OF NEWTON'S POLICE
OFFICERS' SECOND REQUEST FOR PRODUCTION OF DOCUMENTS**

　　　　Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendants. City of Newton.

Newton Police Department, Police Chief Jose M. Cordero. Police Officer Rocky Marini,

Detective Robert F. Sampson, Detective Sergeant George McMains. Police Officer Zachary

Raymond, and Police Officer Joseph McLaughlin, (together the "Newton Defendants")  hereby

request Plaintiff to produce at the offices of the City of Newton, Law Department, 1000 Commonwealth Avenue, Newton, MA, within 30 days of the date of this request, the following documents or tangible things as are in the possession, custody or control of Plaintiff, his agents, servants, employees, or attorneys.

## DEFINITIONS

1. The term "you" or "your" shall mean Plaintiff Barry M. Cohen and each of his agents, attorneys, and any others who have or are now acting or purporting to act for or on behalf of Barry M. Cohen.

2. The term "Complaint" shall mean the complaint filed by you in the above-captioned action.

3. The term "document" means any printed, written, typed, recorded, transcribed, taped, photographic, or graphic matter, however produced or reproduced, including but not limited to: any letter, correspondence, or communication of any sort; film, print or negative of photograph; sound recording, video recording; note, notebook, diary, calendar, minutes, memorandum, contract, agreement, or any amendment thereto; telex, telegram, cable, summary, report or record of telephone conversation, personal conversation, discussion, interview, meeting, conference, investigation, negotiation, act or activity; projection, work paper, or draft; computer output or input, data processing card; opinion or report of consultant; request, order, invoice or bill of lading; analysis, diagram, map, index, sketch, drawing, plan, chart, manual, brochure, pamphlet, advertisement, circular, news paper or magazine clipping, press release; receipt, journal, ledger, schedule, bill or voucher; financial statement, statement of account, bank statement, check book, stubs, or register, cancelled check, deposit slip, charge slip, tax return (income or other), requisition; file, study, graph, tabulation, and any and all other writings and recordings of whatever nature, whether signed or unsigned or transcribed, and any other date compilation from which information can be obtained, translated, if necessary, by the respondent through detection devices into reasonably usable form.

2

4. The term "document" also means (a) the original and/or any non-identical original or copy including those with any marginal note or comment, or showing additions, deletions, or substitutions: (b) drafts: (c) attachments to or enclosure with any document and (d) every document referred to in any other documents.

5. The term "person" shall mean all natural persons and all business entities of any kind. including, but not limited to corporations, unincorporated associations, business trusts, or other entities separately identified, no matter how organized.

6. The term "concerning to" as used herein shall mean referring to, describing, evidencing, or constituting.

7. The term "each" shall mean to include the word "every", and the term "every" includes the word "each"; "any" shall mean to include the word "all" and "all" includes the word "any": "and" shall mean to include the word "or", and "or" includes the word "and".

## INSTRUCTIONS

1. Each request shall be deemed continuing and. in the event that at any time between the responding of any request and the date of the trial of this matter you shall acquire additional documents or information responsive to any request, please file supplemental responses containing such additional documents or information.

2. If an objection is made to any request contained herein, for each item or category objected to:

> a. state the specific ground for each objection;
>
> b. identify each such document by giving its date. the name of each author (and each addressor, if different), the name of each addressee (and each recipient, if different), and by giving any other information necessary to identify such document or part thereof; and
>
> c. provide a description of the subject matter of each document or item.

3

## DOCUMENTS TO BE PRODUCED

1.      All documents, including, but not limited to, a lease or deed, reflecting that Mr. Cohen has been residing in an apartment in New York City since 2000, as stated in Plaintiff's Answers to Interrogatories.

2.      All documents, including, but not limited to. W2 tax forms. that demonstrate Mr. Cohen was "studying and pursing a career in acting," as stated in Plaintiff's Answers to Interrogatories.

3.      All documents, including, but not limited to, all hospital and/or medical reports, relating to the alleged physical injuries to Mr. Cohen's wrists, as stated in Plaintiff's Answers to Interrogatories.

4.      All documents relating to Mr. Cohen's statement in Plaintiff's Answers to Interrogatories that in the weeks immediately following the incident, Mr. Cohen had great difficulty sleeping, suffered recurring nightmares, experienced difficulty eating and digesting food, and was in a state of great distress and terror and suffered from anxiety of a disabling nature, including, but not limited to:

    (a)     all hospital reports and other hospital documents; and

    (b)     reports, evaluations or notes from treatment by private physicians. therapists or other healthcare providers.

5.      All documents, including, but not limited to, hospital and/or medical reports. that reflect when Mr. Cohen was diagnosed with the following symptoms and conditions that he alleges have been worsened and "exacerbated" since the incident. as stated in Plaintiff's Answers to Interrogatories:

    (a)     persecutory anxiety;

    (b)     fear of being alone;

    (c)     continual distress and anxiety;

    (d)     anorexia and weight loss;

    (e)     gastrointestinal distress

4

(f)     depression;

(g)     demoralization;

(h)     pleasurelessness;

(i)     negative associations and intrusive memories;

(j)     compulsive re-living of the incident;

(k)     fatigue;

(l)     lethargy;

(m)     humiliation and embarrassment of being associated with criminal action;

(n)     social anxiety and withdrawal;

(o)     feelings of isolation;

(p)     insomnia;

(q)     fear of being arrested; and

(r)     Obsessive Compulsive Disorder and heightening of obsessive concern.

6.     All documents relating to Mr. Cohen's fear of being touched by others, as stated in Plaintiff's Answers to Interrogatories, including, but not limited to:

(a)     all medical reports, evaluations or notes, from treatment by private physicians, therapists or other healthcare providers;

(b)     all hospital reports and other hospital documents.

7.    All documents relating to Mr. Cohen's fear of being poisoned and/or contaminated by toxins, as stated in Plaintiff's Answers to Interrogatories, including, but not limited to:

    (a)    all medical reports, evaluations or notes, from treatment by private physicians, therapists or other healthcare providers;

    (b)    all hospital reports and other hospital documents.

 

DEFENDANTS,

THE CITY OF NEWTON, THE NEWTON POLICE DEPARTMENT, POLICE CHIEF JOSE M. CORDERO, NEWTON POLICE OFFICER ROCKY MARINI, NEWTON POLICE DETECTIVE ROBERT F. SAMPSON, NEWTON POLICE DETECTIVE SERGEANT GEORGE MCMAINS, NEWTON POLICE OFFICER ZACHARY RAYMOND, NEWTON POLICE OFFICER JOSEPH T. MCLAUGHLIN,

By their attorneys,

Donnalyn B. Lynch Kahn (BBO #556609)
Angela B. Smagula (BBO #643764)
Assistant City Solicitors
City of Newton Law Department
1000 Commonwealth Avenue
Newton Centre, MA 02459
Tel: (617) 796-1240

CERTIFICATE OF SERVICE
I hereby certify that a true copy of the above document was served upon the attorney(s) of record for each other party by mail/hand/fax on _February 14, 2006_

ANGELA B. SMAGULA

Dated:   February 14, 2006

# EXHIBIT H

LAW DEPARTMENT



## CITY OF NEWTON, MASSACHUSETTS
### CITY HALL
**1000 COMMONWEALTH AVENUE**
**NEWTON CENTRE, MA 02459**
TELEPHONE (617) 796-1240
FACSIMILE (617) 796-1254

**CITY SOLICITOR**
**DANIEL M. FUNK**

**ASSOCIATE CITY SOLICITORS**
OUIDA C.M YOUNG        GAYLE A. SMALLEY

**ASSISTANT CITY SOLICITORS**

RICHARD G. CHMIELINSKI
DONNALYN B. LYNCH KAHN
EILEEN M. MCGETTIGAN
CATHERINE L. FARRELL
MARIE M. LAWLOR
ANGELA B. SMAGULA

March 1, 2006

## BY FACSIMILE @ (617) 723-9211 AND (508) 533-0778 AND FIRST CLASS MAIL

Christopher W. McHallan, Esquire
500 Commercial Street
Suite 4R
Boston, Massachusetts 02109

   Re: *Barry M. Cohen v. City of Newton, et al.*
      United States District Court; Civil Action Number 05-11727DPW

Dear Chris:

This afternoon we agreed that you will produce Mr. Cohen's medical records concerning treatment by Drs. Luzzi and Press no later than March 7, 2006.

As we discussed, production of these above-referenced records do not necessarily constitute a full and complete response to Document Requests No. 1 and 2. Once I have reviewed the Luzzi generated documents, I will be able to determine if further medical records pre-dating Dr. Luzzi's retention are required. Until then, my position remains that defendants' are entitled to medical documentation concerning Mr. Cohen's physical, mental and emotional condition from 1980 to present.

If I do not receive the medical records of Drs. Luzzi and Press by March 7, 2006, I will be forced to file a Motion to Compel.

Thank you for your attention to this matter.

Sincerely,

Angela B. Smagula
Assistant City Solicitor

# EXHIBIT I

## ASmagula

| | |
|---|---|
| Subject: | **Cohen v. The City of Newton, et al.** |
| Date sent: | **Tue, 7 Mar 2006 16:00:25 -0500** |
| From: | **"Christopher McHallam" <cmchallum@borcherslaw.com>** |
| To: | **"ASmagula" <asmagula@newtonma.gov>** |

Dear Angela:

Although Mr. Cohen strongly believes the Court would find that the conduct of the Newton Defendants was the direct and proximate cause of a significant exacerbation of his Obsessive Compulsive Disorder and other medical damages, Mr. Cohen has advised me that he no longer wishes to pursue his claims for special medical damages and/or otherwise present any evidence relating to his medical treatment resulting from the incidents described in the Plaintiff's Complaint. Despite believing that he would be successful on such claims, Mr. Cohen has elected to preserve the sanctity of the confidential psychotherapist-patient relationship that might be compromised by the litigation of said claims. Therefore, as the issue of Mr. Cohen's damages related to and/or evidenced by his medical treatment will no longer be included in this matter, it would be unnecessary for Mr. Cohen to authorize the release and/or otherwise produce any of his medical records.

Thank you for your attention to this matter.


Christopher W. McHallam