UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                            )
BARRY M. COHEN,                             )
                                            )
    Plaintiff,                              )
                                            )
v.                                          )   Civil Action No. 05-11727-DPW
                                            )
THE CITY OF NEWTON, THE NEWTON              )
POLICE DEPARTMENT, POLICE CHIEF             )
JOSE M. CORDERO, NEWTON POLICE              )
OFFICER ROCKY MARINI (Badge No. 13963),     )
NEWTON POLICE DETECTIVE ROBERT F.           )
SAMPSON, NEWTON POLICE DETECTIVE            )
SERGEANT GEORGE MCMAINS, NEWTON             )
POLICE OFFICER ZACHARY RAYMOND, and         )
NEWTON POLICE OFFICER JOSEPH T.             )
MCLAUGHLIN,                                 )
                                            )
    Defendants.                             )
_____)

**CLERK MAGISTRATES' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH SUBPOENAS, OR IN THE ALTERNATIVE, FOR PROTECTIVE ORDER**

Clerk Magistrate Henry H. Schultz and Assistant Clerk Magistrate William A. McEvoy, Jr. (the "Clerk Magistrates") respectfully submit this Memorandum of Law in support of their Motion to Quash Subpoenas, or in the Alternative, for Protective Order, filed herewith.

In his Complaint, plaintiff Barry M. Cohen alleges that the Newton District Court[1] issued a warrant for his arrest which was not based on probable cause, and that it did so "at the improper urging of [Newton Police Chief Jose M.] Cordero and the Newton Police." Seeking to explore the circumstances surrounding issuance of the warrant, Cohen has served both of the Clerk Magistrates, who serve as clerk magistrates at the Newton District Court, with deposition

---

[1] The official name of the Newton District Court is the Newton Division of the District Court Department of the Massachusetts Trial Court.

subpoenas. Notably, Cohen has not deposed either Chief Cordero or the officer who submitted the warrant application, even though, unlike the Clerk Magistrates, they are both parties to this lawsuit.

As described more fully below, the federal courts have consistently held that judges and quasi-judicial officers may not be compelled to testify concerning the mental processes used in formulating their judgments. Applied here, this rule means that Cohen may not inquire as to the deliberative processes used by the Clerk Magistrates in determining whether or not to issue a warrant—including the warrant issued for Cohen's arrest. And while courts sometimes allow factual inquires to be made to judges and quasi-judicial officers, such inquiries would not be appropriate here, because Cohen can obtain the information he seeks from parties to the litigation, and without risking invasion of the Clerk Magistrates' privileged deliberative processes. Accordingly, the Court should quash the subpoenas to the Clerk Magistrates. Alternatively, if the Court allows the depositions to go forward, it should enter a protective order limiting the scope of the Clerk Magistrates' deposition testimony to strictly factual matters, and not the mental processes used in formulating their judgments.[2]

## BACKGROUND

Cohen's Complaint asserts six claims against the City of Newton and various Newton police officers arising from his arrest on September 25, 2003. The Clerk Magistrates were originally named as defendants in this case, but the Court dismissed Cohen's Complaint as against them on grounds of sovereign immunity (to the extent they had been named in their

---

[2] In this Memorandum, the Clerk Magistrates limit their discussion to testimony sought by Cohen because he, rather than the defendants, is the party who served the Clerk Magistrates with deposition subpoenas. But the arguments set forth herein would apply with equal force if such testimony were sought by the defendants. Accordingly, if the Court permits the depositions to proceed and enters a protective order limiting the scope of the testimony to be given, the protective order should be fashioned to apply to both Cohen and the defendants.

official capacities) and absolute judicial immunity (to the extent they had been named in their personal capacities). *See* Docket Entry (unnumbered), dated Dec. 20, 2005.

Cohen's allegations regarding the Clerk Magistrates are located at paragraphs 49-54 of his Complaint. Briefly, he alleges that the Newton Police prepared a false and misleading incident report relating to Cohen's encounter with a Newton police officer; according to Cohen, the report suggested that Cohen had engaged in criminal conduct, when in fact, he had not. Compl., ¶¶ 50-51. He further alleges that, at Chief Cordero's direction, the Newton Police then applied for a warrant to arrest Cohen, despite knowing that no basis existed for the application. Compl., ¶ 52. A copy of the warrant application is attached to Cohen's Complaint, and identifies Officer Carolyn Curry of the Newton Police as the complainant who submitted the application.[3] Compl, Exh. 10. Cohen alleges that Assistant Clerk Magistrate McEvoy rejected the request, but that the Newton Police re-submitted the application, and a warrant was issued for Cohen's arrest. Compl., ¶ 53. According to Cohen's Complaint, the second application was granted by Assistant Clerk Magistrate McEvoy on the order of Clerk Magistrate Schultz, who himself was improperly pressured by Chief Cordero and the Newton Police. *Id.* Cohen alleges that these actions resulted in the Newton District Court issuing a warrant for Cohen's arrest in the absence of any probable cause to do so. Compl., ¶ 54.

On or about June 15, 2006, Cohen served each of the Clerk Magistrates with a deposition subpoena. Notably, Cohen has not deposed either Officer Curry or Chief Cordero.[4]

---

[3]   Unlike Chief Cordero, Officer Curry is not a named defendant in this case. But because she is an employee of the City of Newton and the Newton Police Department—both named defendants—as a practical matter, Officer Curry is more accurately described as "party" than a "nonparty."

[4]   Cohen submitted a letter to the Court on June 9, 2006—less than a week before service of his subpoenas on the Clerk Magistrates—indicating that he had not served Chief Cordero with a

3

**ARGUMENT**

**I.     The Clerk Magistrates May Not be Compelled to Testify About the Reasons that Motivated their Decision(s) to Issue or Not Issue an Arrest Warrant for Cohen.**

"[T]he overwhelming authority from the federal courts in this country, including the United States Supreme Court, makes it clear that a judge may not be compelled to testify concerning the mental processes used in formulating official judgments or the reasons that motivated him in the performance of his official duties." *United States v. Roth*, 332 F. Supp. 2d 565, 567 (S.D.N.Y. 2004) (citing cases). For this reason, federal courts routinely quash subpoenas or enter protective orders in order to prevent disclosure of the deliberative processes of judges and quasi-judicial officers. *See, e.g.*, *Robinson v. Comm'r of Internal Revenue*, 70 F.3d 34, 38 (5th Cir. 1995) (affirming decision of Tax Court to quash subpoena directed to state-court judge because a "judge may not be asked to testify about his mental processes in reaching a judicial opinion"); *Gary W. v. Louisiana*, 861 F.2d 1366, 1368-69 (5th Cir. 1988) (affirming district court's decision to quash subpoena directed to special master appointed by the district court); *Roth*, 332 F. Supp. 2d at 567-68 (quashing trial subpoena to state-court judge in part because his "mental processes may not be probed"); *United States v. Dowdy*, 440 F. Supp. 894, 895-97 (W.D. Va. 1977) (quashing trial subpoena to federal judge based on "mental processes" rule).[5] These decisions (and others like them[6]) are based on the recognition that it would be

---

copy of the Complaint. *See* Docket Entry # 46, dated June 9, 2006. As of the filing of this memorandum, Cohen has not filed a return of service with respect to Chief Cordero.

[5]     Importantly, *Roth* and *Dowdy* were both cases where judicial testimony was sought by a criminal defendant, potentially implicating the Sixth Amendment's Compulsory Process Clause. That the judicial officers' testimony was nonetheless prohibited in both cases illustrates the potency of the rule relied on by the Clerk Magistrates. *See Roth*, 332 F. Supp. 2d at 570 (rejecting argument that Compulsory Process Clause required compulsion of judicial testimony).

[6]     *See Western Electric Company, Inc. v. Piezo Technology, Inc.*, 860 F.2d 428, 430-33 (5th Cir. 1988) (holding district court abused its discretion by permitting certain testimony from

4

unseemly to subject judges and quasi-judicial officers to a compelled examination aimed at questioning the wisdom of their decisions:

> [T]he short of the business is that the Secretary should never have been subjected to this examination. The proceeding before the Secretary has a quality resembling that of a judicial proceeding. Such an examination of a judge would be destructive of judicial responsibility. We have explicitly held in this very litigation that it was not the function of the court to probe the mental processes of the Secretary. Just as a judge cannot be subjected to such a scrutiny, so the integrity of the administrative process must be equally respected.

*United States v. Morgan*, 313 U.S. 409, 422 (1941) (citations and internal quotation marks omitted). Accordingly, Cohen should be prohibited from inquiring into the reasons which motivated the Clerk Magistrates' decision(s) to issue or not issue a warrant for Cohen's arrest.

**II.     The Clerk Magistrates Should Not be Compelled to Testify About Factual Matters Because the Same Information is Available from Other Sources.**

In some circumstances, federal courts have allowed the compelled testimony of judges and quasi-judicial officers—but only as to strictly factual matters. *See, e.g.*, *United States v. Edwards*, 39 F. Supp. 2d 692, 706 (M.D. La. 1999) ("The essential line of demarcation appearing from the cases is that judicial and quasi-judicial officers may be compelled to testify only as to relevant matters of fact that do not probe into or compromise the mental process employed in formulating the judgment in question.") (quoting *Standard Packaging Corp. v. Curwood, Inc.*, 365 F. Supp. 134, 135 (N.D. Ill. 1973)). But even where courts have permitted testimony as to purely "factual matters," they have generally done so only in limited circumstances. *See United*

---

patent examiner, a quasi-judicial officer); *United States v. Roebuck*, 271 F. Supp. 2d 712, 717-24 (D.V.I. 2003) (quashing subpoenas directed to judges where testimony was sought to create a factual record in support of a recusal motion); *United States v. Edwards*, 39 F. Supp. 2d 692, 705-06 (M.D. La. 1999) (denying motion to disqualify judge where defendant indicated intent to call judge as witness; it was "doubtful that [he] would be required to testify" because "a judge is not required to explain any of his decisions nor to divulge reasons which may have motivated his actions or opinion"); *Standard Packaging Corp. v. Curwood, Inc.*, 365 F. Supp. 134, 135-37 (N.D. Ill. 1973) (limiting inquiries to patent examiner to those "that do not probe into or compromise the mental processes employed in formulating the judgment in question").

5

*States v. Frankenthal*, 582 F.2d 1102, 1108 (7th Cir. 1978); *Roth*, 332 F. Supp. 2d at 568. For example, in *Frankenthal*, the Seventh Circuit permitted the trial testimony of a judge because he "possessed factual knowledge that was highly pertinent to the jury's task, and he was the only possible source of testimony on that knowledge." *Id.* at 1108. Similarly, in *Roth*, the Court held that "a judge may only be required to testify if he (1) possesses factual knowledge, (2) that knowledge is highly pertinent to the jury's task, and (3) is the only possible source of testimony on the relevant factual information." 332 F. Supp. 2d at 568.

Here, Cohen cannot credibly claim that the Clerk Magistrates are the only possible sources of factual testimony about the issuance of the warrant. Indeed, according to Cohen's own Complaint, there are at least two other persons with such knowledge: (1) Officer Curry, who submitted the warrant application; and (2) Chief Cordero, who Cohen alleges "improper[ly] urg[ed]" that the warrant be issued even though, according to Cohen, there was not probable cause to do so.

Next, as other courts have properly recognized, the line between a seemingly factual inquiry and one which invades a decision-maker's mental process is often fine—or even nonexistent. *See United States v. Roebuck*, 271 F. Supp. 2d 712, 721 (D.V.I. 2003) ("Simply putting the word 'factually' before a request for information does not make that information discoverable under the case law."); *Edwards*, 39 F. Supp. 2d at 706 ("[E]ven though a particular inquiry may be factually directed, it may still be objectionable if it invades upon an official's good-faith decision making prerogative.") (quoting *Standard Packaging*, 365 F. Supp. at 135). Indeed, in *Standard Packaging*, the Court was forced to parse a series of deposition questions— one-by-one—to determine whether the deponent would be required to answer. 365 F. Supp. at 136-37. Moreover, the court acknowledged that, in all likelihood, its work was not done:

6

> As presently stated, [certain] inquiries seeks facts and only facts. . . . However, several of these questions . . . approach violation of the "mental processes" rule. It is possible, and, indeed, probable, that subsequent inquiries will run afoul of the stated rule. Accordingly, defense counsel is cautioned in this regard.

*Id.* at 137. In this case, given that Cohen can obtain the factual information he seeks from other sources, the Court need not undertake the same task. Instead, the Court should quash the subpoenas and require Cohen to obtain the information he seeks from Chief Cordero and Officer Curry. Unlike the Clerk Magistrates, they are parties to this litigation, and their testimony would not risk disclosure of privileged material, as would that of the Clerk Magistrates.

### III.   Quashing of the Subpoenas is Appropriate to Promote a Policy of Comity Between the Federal and State Court Systems.

Finally, quashing of the subpoenas is also appropriate here to promote a policy of comity between the federal and state courts. "As a matter of comity, federal courts recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy." *In re Administrative Subpoena Blue Cross Blue Shield of Mass.*, 400 F. Supp. 2d 386, 390 (D. Mass. 2005) (Saris, J.) (citations and quotation marks omitted); *In re Production of Records to Grand Jury*, 618 F. Supp. 440, 442 (D. Mass. 1985) (Young, J.). Massachusetts law has long held that it is generally improper to compel testimony from judges and quasi-judicial officers—especially as to their mental processes. *See Day v. Crowley*, 341 Mass. 666, 669-70; 172 N.E.2d 251, 253 (1961) (noting that "judge cannot properly state the secret and expressed reasons which actuated his decision") (citations and quotation marks omitted). Indeed, Massachusetts law prohibits even the service of a subpoena on a "justice, magistrate or probation officer of the Trial Court concerning actions taken in her or his official capacity" without prior court approval. Mass. Uniform Rules on Subpoenas to Court Officials, Rule 1. The Massachusetts Superior Court has described the process to obtain testimony under this rule as "extraordinary," and has indicated that testimony from judges and quasi-judicial

7

officers should not be permitted "absent a showing that there are no other means by which the desired testimony can be obtained . . . and, absent a showing that the testimony itself is critical to an understanding of the [case]."[7] *Commonwealth v. Ellis*, No. 97-0192, 1999 WL 855196 at *2-3 (Mass. Super. Ct. Aug. 23, 1999); *Weisberg v. Lupo*, No. 93-5904, 1995 WL 1146847 at *1-2 (Mass. Super. Ct. July 31, 1995) (denying issuance of subpoena to retired judge because "it is improper to probe [her] mental processes," and limiting subpoena to clerk magistrate to factual testimony about procedure he used).  Because Massachusetts has a strong policy against compelled judicial testimony, comity between the federal and state courts provides an additional basis to quash the subpoenas.[8] *See Phelan v. Thompson*, 161 F.R.D. 7, 8-9 (D.N.H. 1994) (quashing deposition subpoena to New Hampshire state-court judge because New Hampshire law recognizes a judicial privilege); *see also In re Hampers*, 651 F.2d 19, 22-23 (1st Cir. 1981) (articulating factors federal courts should consider in determining whether to recognize state-law privilege).

*     *     *     *     *

As noted, the Clerk Magistrates were originally named as defendants in this lawsuit.  The Court dismissed Cohen's Complaint as against them in part based on the doctrine of judicial immunity.  While not explicitly discussed in the caselaw, it is hard to overlook the obvious relationship between compelled judicial testimony and judicial immunity.  Judicial immunity is not just a no-damages rule; it is immunity from suit—necessarily including the attendant burdens

---

[7] The standard articulated by the Superior Court in *Ellis* is substantially similar to the one used by federal courts in *Frankenthal* and *Roth*: the testimony must be critical, and not otherwise available.  Here, as noted, the factual information Cohen seeks is otherwise available.

[8] Here, the interests of comity would served not just by recognition of a Massachusetts state-law privilege, but also because the testimony at issue is sought from officers of the Massachusetts courts.

of litigation.  *See, e.g.*, *Mireles v. Waco*, 502 U.S. 9, 11 (1991); *Pulliam v. Allen*, 466 U.S. 522, 548 (1984) (Powell, J., dissenting) ("[T]he burdens of litigation, rather than the threat of pecuniary loss, are [often] cited as posing a threat to judicial independence and occasioning the need for immunity.").  Forcing the Clerk Magistrates to give testimony justifying their decision(s) to issue or not issue an arrest warrant, or even to describe facts obtained during execution of their judicial duties (especially where the same facts are available from other sources), would undermine the basis for judicial immunity and effectively reduce the doctrine to a no-damages rule.  The Court should quash the subpoenas.

## **CONCLUSION**

For the foregoing reasons, the Court should allow the Clerk Magistrates' Motion, and quash the subpoenas directed to the Clerk Magistrates.  Alternatively, it should enter an appropriate protective order limiting the scope of the Clerk Magistrates' deposition testimony to strictly factual matters, and not the mental processes used in formulating their judgments.

          Respectfully submitted,

          HENRY H. SCHULTZ,
          CLERK MAGISTRATE, and

          WILLIAM A. MCEVOY, Jr.,
          ASSISTANT CLERK MAGISTRATE

          By their attorney,

          THOMAS F. REILLY
          ATTORNEY GENERAL

          /s/ Scott A. Katz
          Scott A. Katz (BBO # 655681)
          Assistant Attorney General
          Criminal Bureau
          One Ashburton Place
          Boston, Massachusetts  02108
          (617) 727-2200, ext. 2833

Dated:  June 27, 2006

## **CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), which includes counsel for all parties in this matter.

          /s/ Scott A. Katz
          Scott A. Katz