UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BARRY M. COHEN,<br>　　　Plaintiff<br><br>v.<br><br>THE CITY OF NEWTON, THE NEWTON<br>POLICE DEPARTMENT, POLICE CHIEF<br>JOSE M. CORDERO, NEWTON POLICE<br>OFFICER ROCKY MARINI, (BADGE NO.<br>13963) NEWTON POLICE DETECTIVE<br>ROBERT F. SAMPSON,  NEWTON POLICE<br>POLICE DETECTIVE, NEWTON POLICE<br>DETECTIVE SERGEANT GEORGE<br>MCMAINS, NEWTON POLICE OFFICER<br>ZACHARY RAYMOND,  AND NEWTON<br>POLICE OFFICER JOSEPH T. MCLAUGHLIN,<br>　　　Defendants | CIVIL ACTION<br>NO. 05-11727 DPW |

### DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S REQUEST FOR CERTAIN RESTRICTIONS ON DEFENDANTS' INDEPENDENT MEDICAL EXAMINATION

Defendants City of Newton, Newton Police Department, Police Chief Jose M. Cordero, Police Officer Rocky Marini, Detective Robert F. Sampson, Detective Sergeant George McMains, Police Officer Zachary Raymond and Police Officer Joseph McLaughlin hereby respectfully submit this memorandum in opposition to the Plaintiff's request for certain limitations and restrictions on Defendants' Independent Medical Exam of Plaintiff.

### BACKGROUND

The Court granted the Defendants' Renewed Motion for an Independent Mental Examination of Plaintiff on July 17, 2007.  In the Order directing the plaintiff to submit to the Independent Mental Examination, the Court directed the Defendants to file this Memorandum of Law responding to the Plaintiff's demands for certain limitations and restrictions to the

examination in Plaintiff's Memorandum of Law in Opposition to the Newton Defendants' Motion for an Independent Medical Examination ("Plaintiff's Original Opposition").

The Court has ordered that the Independent Medical Examination take place at the office of Defendants' medical expert, Dr. Martin Kelly, and that Plaintiff's attorney shall not be permitted to attend the examination. Plaintiff's remaining requested limitations, in his Original Opposition, are as follows:

1. that the Plaintiff be permitted to create an audio/video tape recording of the independent examination;

2. that the scope of the examination be limited in advance to inquiries "reasonably relating to his claim for medical damages;"

3. that the scope of any examination be limited in advance to "a verbal dialog between [the Plaintiff] and the examining physician," specifically precluding any kind of "physical examination" or any form of testing beyond merely verbal exchange;

4. that the examination be limited to one (1) two-hour session rather than the two (2) two-hour sessions requested and customarily relied upon by the Defendants' examining expert; and

5. that the Defendants be required to provide the Plaintiff with copies of all findings and reports that result from the independent examination pursuant to Rule 35(b); and further that all other records, documents, notes, and other information resulting from the independent examination be considered "Confidential Information" within the purview of the parties' Protective Order. See Plaintiff's Original Opposition at 9-11.

Defendants object to Plaintiff's demands Nos. 1- 4 as Plaintiff has failed to provide "good cause" for such restrictions. Moreover, such restrictions would unreasonably intrude upon the ability of Dr. Kelly to conduct a valid psychiatric evaluation in accordance with applicable, professional standards and otherwise impermissibly interfere with the purpose of a Rule 35(a) examination. Therefore, Defendants respectfully request the Court deny Plaintiff's requested limitations and restrictions.[1]

---

[1] Defendants offer no objection to Plaintiff's demand under item No. 5 that Plaintiff be provided with copies of all findings and reports that result from the independent examination, as is required by Rule 35(b), or to Plaintiff's

**ARGUMENT**

I.   **The Plaintiff's Demands Fail To Show Good Cause For Introducing Restrictions That Would Undermine The Defendants' Legitimate Interest In A Complete and Valid Independent Mental Examination.**

Defendants have a legitimate interest in eliminating intrusions that would affect the results of the psychiatric examination of the plaintiff.  See Tirado v. Erosa, 158 F.R.D. 294, 300 (S.D.N.Y. 1994).  For this reason, and because the mental examination provides the Defendants their *only* opportunity to have the Plaintiff examined by the Defendants' expert, the court should act with a "preference. . . to allowing *the examiner to exercise discretion in the manner and means by which the examination is conducted*, provided that it is not an improper examination." Hertenstein v. Kimerly Home Health Care, 189 F.R.D. 620, 624 (D. Kan. 1999) (emphasis added).  Here, Plaintiff's demands would unreasonably and unfairly interfere with the exercise of professional discretion by the Defendants' expert in the conduct of his inquiry and thus undermine the purpose of the examination.

The Plaintiff must demonstrate "good cause" for each condition Plaintiff seeks to impose upon the medical examination.  See id.  Absent a showing of good cause, federal courts will not impose the condition.  See id.  Mere conclusory statements, such as the Plaintiff's assertion that a professional mental examination unencumbered by extensive restrictions might subject him to "hardship or trauma", Plaintiff's Original Opposition at 8, fail to demonstrate good cause.  See Hertenstein, 189 F.R.D. at 620.  Instead, the party seeking the condition or restriction must make a showing of good cause that is founded on "a particular and specific demonstration of fact." See id., citing Gulf Oil v. Bernard, 452 U.S. 89, 102 n.16 (1981).  Thus, the appropriate inquiry for the Court, is whether special factual circumstances exist which call for a restriction tailored to

---

demand that all other records, documents, notes, and other information resulting from the independent examination be considered "Confidential Information" within the purview of the parties' Protective Order.

3

the specific problems presented.  See Tirado, 158 F.R.D. at 299.  Here, the justifications Plaintiff advances for establishing restrictive conditions on the Defendants' conduct of its independent mental exam are merely the suggestion that an examination *might* subject the Plaintiff to unspecified "hardship or trauma" or that he *might* find the environment in which the examination is conducted "stress inducing."  See Plaintiff's Original Opposition at 8.   These vague and unspecific apprehensions do not provide any factual support to justify the broad and intrusive restrictions Plaintiff wishes to impose on Defendants' independent mental examination.  See e.g., Hertenstein, 189 F.R.D. at 624; Tirado, 158 F.R.D. at 299.

> A.    Plaintiff's Demand To Videotape Or Otherwise Record The Examination Would Compromise Dr. Kelly's Ability To Conduct A Valid Psychiatric Examination.

In order to fulfill the purpose of a Rule 35(a) independent medical examination, the party requesting the examination "should be free from oversight by the opposing party."  Holland v. United States, 182 F.R.D. 493, 495 (D.S.C. 1998).  This prohibition on such oversight properly extends to indirect supervision of the sort the Plaintiff seeks through a recording device as the federal courts have treated the presence of third-party observers or mechanical recording devices as intrusions that are "simply variations of the same conditions," practically indistinguishable, and therefore to be prohibited for the same reasons.  Hertenstein, 189 F.R.D. at 628-629; see also Holland, 182 F.R.D. at 495.  Therefore, "the party seeking the presence of a third party or recording device must carry the burden of convincing the court."  EEOC v. Grief Bros. Corp., 218 F.R.D. 59, 64 (W.D.N.Y. 2003); see also Hertenstein, 189 F.R.D. at 630.  Nothing in the Plaintiff's Original Opposition establishes any factual basis to support a finding of "good cause" for this demand.  Indeed, his mere characterization of the use of audio-video recording as one of

many needed "safeguards" does not justify the proposed intrusion and fails to identify the specific risk against which it might possibly protect. See Plaintiff's Original Opposition at 9.

Three primary judicial rationales militate against the use of recording devices in Rule 35(a) examinations. See Tomlin v. Holecek, 150 F.R.D. 628, 631-35 (D. Minn. 1993). First, the introduction of any kind of recording device would impermissibly compromise the "unimpeded, one-on-one exchange" between the medical professional and the subject of the exam by introducing "a degree of artificiality to the interview technique" that would be inconsistent with applicable, professional standards and thus potentially invalidate the evaluation. See id. at 631-32; see also Tirado, 158 at 293-94; Hertenstein, 189 F.R.D. at 630. In circumstances remarkably like those of the instant case, the plaintiff in Tirado brought civil rights claims under 42 U.S.C. § 1983 against New York City police officers, claiming that her false arrest and the officers' use of excessive force had caused her severe physical and psychological injury. See Tirado, 158 F.R.D. at 294. In rejecting the plaintiff's demand to videotape or otherwise record her examination by the defendants' medical expert, the court held that the use of such intrusive recording methods could not be permitted since it would unavoidably change the "nature of the proceeding, much in the way that television 'coverage' of events qualitatively changes what occurs in front of the camera." See Tirado, 158 F.R.D. at 299.

Similarly, in Hertenstein, a plaintiff seeking damages from her employer for mental and emotional injuries resulting from alleged workplace harassment sought to record her examination by the defendant's medical expert on audio-tape. 189 F.R.D. at 631. The court denied this request, finding that its use might cause the plaintiff to "perceive the recording as critical to her case and fail to respond in a forthright manner." 189 F.R.D. at 631, citing Holland, 182 F.R.D. at 496 (prohibiting the use of a recording device to record a physical examination in the context

5

of a medical malpractice suit). The court was clearly concerned that the introduction of audio-video recording would influence the Plaintiff "even unconsciously, to exaggerate or diminish his reactions" to questions posed by the defendant's expert and thereby invalidate the defendant's examination. See Hertenstein, 189 F.R.D. at 631; see also Holland, 182 F.R.D. at 496; Tirado, 158 F.R.D. at 299.

This same potent concern is present in the instant case. At minimum, it seems clear that the introduction of a recording device "would constitute a distraction during the examination and work to diminish the accuracy of the process." See Hertenstein, 189 F.R.D. at 634. Such a result would clearly compromise the Defendants' ability to obtain a valid, accurate independent mental examination, and therefore the court should deny the Plaintiff's demand to record the Defendants' independent mental examination. See Affidavit of Dr. Martin Kelly at ¶¶ 8-10, attached hereto as Exhibit A ("Dr. Kelly Aff.").

A second rationale for prohibiting the use of recording devices in Rule 35(a) examinations is that allowing this monitoring tool to plaintiffs without affording any corresponding provision to defendants would be inconsistent with the goal of Rule 35 to establish a "level playing field" between parties. See Holland, 182 F.R.D. at 496; Tirado, 158 F.R.D. at 300; Tomlin, 150 F.R.D. at 632. In Tomlin, the court noted that its refusal to allow the plaintiff to record the results of his examination by the defense's medical expert left him at "no disadvantage" and in fact "preserve[d] the equal footing" of the parties to evaluate the plaintiff's mental state since the defendants were, for their part, without a recording or transcript of the interviews of the plaintiff that were conducted by his own psychologists. See 150 F.R.D. at 633.

The third rationale against the use of recording devices in independent medical examinations is the tendency such a practice would have of infusing "the adversary process into

the psychologist's examining room." See Tomlin, 150 F.R.D. at 634. Such a practice would tend to "convert adverse medical examiners into advocates, and shift the forum of controversy from the courtroom" to the examining room. See Tomlin, 150 F.R.D. at 634; Tirado, 158 F.R.D. at 298. Should Dr. Kelly come to conclusions at odds with the conclusions presented by the Plaintiff, or should the Plaintiff challenge the accuracy of statements attributed to him in Dr. Kelly's report, the usual, fact-finding functions of cross-examination and the trial process can and should be relied upon to establish the truth. See Tirado, 158 F.R.D. at 298-99 ("[t]he jury will not need a 'transcript' to determine whom to believe.")[2]

Therefore, Defendants' respectfully request this Court deny Plaintiff's demand for an audio or visual tape-recording of the independent medical exam.

    **B.    Plaintiff's Demand To Limit The Scope Of The Examination To Inquiries Relating To His Claim For Medical Damages Is Unmanageable And Unduly Restricts Dr. Kelly's Exercise Of Professional Judgment.**

Federal courts have consistently declined to establish the kind of limitations on questioning that the Plaintiff has demanded, or to otherwise issue controlling directives to examining experts, as such restrictions unnecessarily inhibit the expert examiner's ability to obtain the information necessary to reach sound, medical conclusions and are generally impractical and unworkable. See Hertenstein, 189 F.R.D. at 626; Tomlin, 150 F.R.D. at 631 n.1; Lowe v. Philadelphia Newspapers, Inc., 101 F.R.D. 296, 299 (E.D. Pa. 1983). Under Rule 35(a), an examining physician "may ask the examinee such questions as are necessary to form an opinion about her condition and the cause of the alleged injury" since limiting or prohibiting the

---

[2] The facts of the instant case contrast sharply with a few highly specialized federal cases where the court has permitted the introduction of some kind of recording methodology into the examining room. See, e.g., DiBari v. Incaica Cia Armadora, 126 F.R.D. 12, 14 (E.D.N.Y. 1989) (Plaintiff, not a native English speaker, allowed to have a stenographer present); See Stoner v. New York City Ballet Co., 2002WL31875404, *7 (S.D.N.Y.) (Court allowed audiotape of plaintiff's examination by defendant's expert at *defendant's* request, consistent with the premise that examiners have the discretion of the manner and means by which the examination is conducted.).

physician from questioning a patient during an examination "unduly restricts the physician's ability to obtain the information necessary to reach medical conclusions." Hertenstein, 189 F.R.D. at 626.  Among the areas that are relevant to such an inquiry in a claim for mental and emotional damages are events, circumstances, and episodes of past personal history that may have contributed to a plaintiff's claimed emotional distress.  See Lowe, 101 F.R.D. at 298-99 (holding that with such claims "the entire past history of the plaintiff is subject to discovery".)

In Lowe, a plaintiff alleging that her employer's discriminatory treatment of her caused her severe physical and emotional distress and harm attempted to limit the scope of the defense's independent mental examination exclusively to matters related to her employment.  See id.  The court denied her request to impose such limits, holding that the defense had "a clear right to make a searching inquiry into plaintiff's past" for purposes of showing, among other things, that the emotional and physical distress she claimed to suffer might well have been caused, in part or in whole, by events and circumstances totally unrelated to the circumstances of her employment.  See id.  That very set of circumstances is present in the instant case.  Here, as the plaintiff did in Lowe, the Plaintiff has squarely put his emotional and mental state of health at issue and Defendants are entitled to a "searching" examination of the plaintiff's current and past mental and emotional problems.  See, e.g., Lowe, 101 F.R.D. at 299

Beyond creating an unduly restrictive barrier to the proper conduct of an independent medical examination, requests such as the Plaintiff's to limit in advance the scope of a physician's inquiry is impractical and unrealistic.  See Romano v. Il Morrow, Inc., 173 F.R.D. 271, 273 (D. Or. 1997); Tomlin, 150 F.R.D at 631 n.1.  In Romano, a plaintiff who sought damages from repetitive stress injury demanded that the defendants submit his proposed questions in advance and agree not to ask any additional questions during the examination.  See

8

173 F.R.D. at 272-73.  Such a condition, the court held, would "unduly restrict" the examining physician's ability to obtain the information necessary to reach valid medical conclusions since all of the questions that an examiner needs to ask, "in particular the follow-up questions, cannot be determined in advance" of the examination.  See id.

Similarly, in Tomlin, a former security guard who brought suit against his employer for severe and permanent physical and emotional injuries sustained in the course of breaking up a union fracas, sought to impose restrictions on the line of questioning to be undertaken in a psychological evaluation by the defendant's medical expert in order to prevent the evaluation from becoming "a second deposition."  See 150 F.R.D. at 629.  To avoid this risk, the plaintiff requested, among other things, that the defendants submit in advance all of the questions the examining physician intended to ask of the plaintiff.  See id.  The court dismissed this proposal as clearly "unworkable."  See id. at 631 n.1.  In fact, the court *refused to impose any form of monitoring or other restrictions on the examiner's line of questioning*, reasoning that the "degree of latitude" provided in a two-hour interview in which the defendant's expert would be able to question the plaintiff "at will" was no greater (and was in fact considerably less) than the "liberality" extended to the plaintiff's own consultants, who might question the plaintiff on as many occasions and on whatever matters he might choose.  See id. at 632.  Moreover, the court found that the defendant's medical expert would be restrained by "principles of professional integrity" from pursuing inappropriate questioning, and that any objection that the plaintiff might have to the propriety of the examination could ultimately be submitted to the court for resolution or attacked through cross-examination at trial.  See id. at 632-33.

Additionally, claims of anxiety or stress associated with such an examination are not good cause to restrict the manner and scope of the examination.  For example, in Hertenstein, the

9

court denied the plaintiff's requests for restrictions on the manner and scope of an independent mental examination by the defendant's medical expert to evaluate the plaintiff's claims of severe emotional distress and mental anguish as a result of sexual harassment and retaliation in the workplace.  See 189 F.R.D. at 635.  Among the controls the plaintiff requested and the court denied were that the examining physician disclose beforehand the nature of the questions he intended to ask and the tests he planned to administer and that the physician provide advance assurances that he would interview and examine the plaintiff with "extra sensitivity," given her allegedly fragile condition, which included "suicidal ideations," according to her therapist.  See id. at 623, 624.  The court held that the mere assertion that these measures would "reduce the stress levels" suffered by the plaintiff failed to establish an interest that outweighed the defendant's interest in a properly conducted examination.  See id. at 634; see also Stoner, 2002 WL 31875404, *5  (the court declined to prohibit the inquiry of an examining psychiatrist into events preceding or separate from the plaintiff's employment history in part because an unrestricted inquiry did not pose any "threat to plaintiff's well-being," whether or not the prospect caused the plaintiff "stress.")

As a consequence, Plaintiff's demand in the instant case that he be protected from inquiries that may be "stress inducing" or that may raise vague, unspecified fears of "hardship or trauma," are not good cause to unnecessarily restrict the medical examination.  Plaintiff's Original Opposition, 8-9, 11.  Furthermore, it is clear that insisting that Dr. Kelly limit his inquiries to the vague and uncertain territory of matters "reasonably relating" to the Plaintiff's claim for medical damages" is a restriction that is so imprecise as to be unworkable and therefore improperly restrictive.  See Dr. Kelly Aff. at ¶¶ 6, 11, and 12.

      **C.    Plaintiff's Demand To Limit The Conduct Of The Examination To Verbal Dialogue Only And Preclude Any Other Form of Testing Also Unduly Restricts Dr. Kelly's Exercise Of Professional Judgment.**

For the same reasons that courts resist plaintiff demands to restrict the range and manner of questioning that independent medical professionals may pursue in independent medical exams, they decline to dictate what sorts of examination techniques may be used by the medical professional conducting the examination. See Hertenstein, 189 F.R.D. at 624; Ragge v. MCA/Universal Studios, 165 F.R.D. 605, 609 (C.D. Ca. 1995). Recognizing the value of upholding applicable professional standards, the court will not require medical experts to deviate from the procedures they normally follow in such examinations. See Romano, 173 F.R.D. at 273. The broad prohibition requested by the Plaintiff on any form of testing other than merely verbal interchange would improperly eliminate the discretion due to the Defendants' examining physician to determine the "manner and means" by which the examination is conducted. See Hertenstein, 189 F.R.D. at 624. The requested prohibition would also compromise the legitimate interest the Defendants have in conducting an inquiry free of intrusions that would affect the results of the psychiatric examination of the Plaintiff. See Tirado, 158 F.R.D. at 300. The court should therefore decline to impose such a restriction without a showing by the Plaintiff of good cause that rests on a clear, factual basis. See Hertenstein, 189 F.R.D. at 624.

Here, the Plaintiff's vague apprehensions of "unnecessary hardship or trauma" are likewise unsupported by any factual assertions that Dr. Kelly will subject the Plaintiff to any form of examination that is physically or psychologically threatening or otherwise inconsistent with applicable professional standards.[3] Thus, his demand to restrict Dr. Kelly's exercise of professional discretion should be denied. See Plaintiff's Original Opposition at 8. As the court duly noted in Stoner, "plaintiff has chosen to press this lawsuit and to seek relief from defendant.

---

[3] Here, Dr. Kelly will have no need to actually touch Plaintiff, so Plaintiff's concern is eliminated.

11

. .[and is] . . . required to submit to reasonable discovery, even if he finds it unattractive or worrisome." See Stoner, WL 31875404, 5.

> **D.   Plaintiff's Demand To Limit The Duration Of The Examination To One (1) Two-Hour Session Unduly Restricts Dr. Kelly's Exercise Of Professional Discretion.**

The Plaintiff has not shown good cause for contravening Dr. Kelly's practice that a complete and appropriate evaluation of the Plaintiff will require two sessions of two hours each. See Dr. Kelly Aff. at ¶¶ 5-7. Plaintiff's proposed restriction would impermissibly undermine the discretion properly granted to experts conducting Rule 35(a) examinations on behalf of plaintiffs and should therefore be denied. See Stoner, WL 31875404, 5; Hertenstein, 189 F.R.D. at 624.

Courts have approved a broad range of schedules for independent mental examinations when plaintiffs have claimed mental and emotional damages, regularly deferring to the recommendations of the examining expert. See Hertenstein, F.R.D. at 625-26; Tomlin, 150 F.R.D. at 629; Lowe, 101 F.R.D. at 299. In Hertenstein, the court granted the defense's request for a two-hour mental examination and denied the plaintiff's demand that she be permitted to take breaks during the course of the exam since her expressed "need to reduce stress" did not suffice to justify interrupting the "short duration" of the proposed exam. See 189 F.R.D. at 625-26. Similarly, in Tomlin, the court approved a schedule for psychological examination that included at two-hour clinical interview and the administration of three forms of additional testing in connection with the plaintiff's claim for mental and emotional suffering as a consequence of alleged workplace harassment. See 150 F.R.D. at 629. And likewise, in Lowe, the court approved a schedule of two (2) ninety-minute sessions for similar claims following from alleged racial discrimination in the workplace. See 101 F.R.D. at 299. Thus, the two (2) two-hour examination sessions of Dr. Kelly falls well within the range of examination schedules approved

by the court in similar circumstances.  See Stoner, WL 31875404, 5; Hertenstein, F.R.D. at 625-26; Tomlin, 150 F.R.D. at 629; Lowe, 101 F.R.D. at 299.

The facts of the instant case closely resemble those in Stoner, where the court permitted the defendant's psychiatric expert two (2) four-hour evaluative sessions on different days with the possibility of follow-up sessions for psychological testing and denied the plaintiff's claim that, on the basis of his own expert's authority, the examination should not exceed two (2) ninety-minute sessions.  See Stoner, WL 318 7 5404 at *5.  The assertion of the plaintiff's attorney in Stoner failed to offer "persuasive evidence" that the schedule proposed by the defense was "unreasonable for a forensic psychiatric evaluation" of the mental and emotional injuries claimed by the plaintiff as a consequence of alleged workplace harassment.  See id.  Likewise in the instant case, the Plaintiff's demand to limit the duration of the examination is unaccompanied by any evidence whatsoever that the Defense's proposed schedule is unnecessary or unreasonable and should therefore be denied.

As the Plaintiff advances no persuasive evidence that the Defendants' request for two (2) two-hour sessions is either unnecessary or unreasonable, the court should deny the Plaintiff's demand to limit the duration of the independent mental examination to one (1) two-hour session.

## CONCLUSION

WHEREFORE, the Defendants respectfully request that this Court deny Plaintiff's requested restrictions and limitations identified herein.

Respectfully submitted,

DEFENDANTS,

THE CITY OF NEWTON, THE
NEWTON POLICE DEPARTMENT,
POLICE CHIEF JOSE M. CORDERO,
NEWTON POLICE OFFICER ROCCO
MARINI, (BADGE NO. 13963) NEWTON
POLICE DETECTIVE ROBERT E.
SAMPSON, NEWTON POLICE
POLICE DETECTIVE, NEWTON
POLICE DETECTIVE SERGEANT
GEORGE MCMAINS, NEWTON
POLICE OFFICER ZACHARY
RAYMOND AND NEWTON POLICE
OFFICER JOSEPH T. MCLAUGHLIN

By their attorneys,

*/s/ Angela Buchanan Smagula*

_____
Donnalyn B. Lynch Kahn (BBO #556609)
Angela Buchanan Smagula (BBO #643764)
Assistant City Solicitors
City of Newton Law Dept.
1000 Commonwealth Avenue
Newton Centre, MA 02459
Tel: (617) 796-1240

Dated:   July 25, 2007

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BARRY M. COHEN,<br>Plaintiff<br><br>v.<br><br>THE CITY OF NEWTON, THE NEWTON POLICE DEPARTMENT, POLICE CHIEF JOSE M. CORDERO, NEWTON POLICE OFFICER ROCCO MARINI, (BADGE NO. 13963) NEWTON POLICE DETECTIVE ROBERT F. SAMPSON, NEWTON POLICE POLICE DETECTIVE, NEWTON POLICE DETECTIVE SERGEANT GEORGE MCMAINS, NEWTON POLICE OFFICER ZACHARY RAYMOND, NEWTON POLICE OFFICER JOSEPH T. MCLAUGHLIN, THE NEWTON DIVISION OF THE DISTRICT COURT DEPARTMENT OF THE TRIAL COURT, HENRY H. SCHULTZ, CLERK MAGISTRATE, WILLIAM A. MCEVOY, JR., ASSISTANT CLERK MAGISTRATE, MIDDLESEX DISTRICT ATTORNEY'S OFFICE, AND THE COMMONWEALTH OF MASSACHUSETTS,<br>Defendants | CIVIL ACTION<br>NO. 05-11727 DPW |

### AFFIDAVIT OF DR. MARTIN KELLY

I, Dr. Martin Kelly, do hereby state the following:

1. My name is Martin J. Kelly, M.D. I am a psychiatrist licensed to practice medicine since 1966 and am currently on the staff of the Brigham and Women's Hospital and Associate Professor of Psychiatry at Harvard Medical School.

2. I have had extensive experience in treating patients and also evaluating individuals involved in criminal and civil proceedings.

3. I have been asked to do an independent evaluation of the plaintiff in the above captioned case now pending in Federal Court.

4. I have been provided medical records pertaining to the plaintiff's psychiatric and medical history.

5. The standard psychiatric evaluation consists of face-to-face interviews between a psychiatrist and an individual who is being evaluated.

6. An appropriate evaluation will require an examination of the plaintiff which will consist of two interviews, each lasting approximately two hours. The psychiatric examination will consist of an extended diagnostic interview and a mental status exam. Occasionally, it may be necessary to have additional interviews depending on the complexity of factors. Under most circumstances, however, only two sessions are necessary.

7. Generally, the two sessions will be a week or more apart to lessen the likelihood of a single session representing an unusually "good" or "bad" day for the person being evaluated.

8. In order to assess the plaintiff, the psychiatric examination should be performed during a one-on-one interview with the plaintiff. Personal observation of the plaintiff's responses is desirable to obtain the full scope of the psychiatric opinion.

9. The presence of tape or video recorders inevitably changes the nature of the encounter such that the responses of the individual are consciously or unconsciously directed to both the psychiatrist and the tape machine.

10. Observed or taped sessions tend to be somewhat artificial, much less spontaneous, and the person's train of thought tends to be more constricted and limited, potentially lessening the scope of the psychiatric opinion.

11. After initially interviewing the plaintiff, the evaluation might also entail standardized psychological testing.

12. It is impossible to determine in advance which of the available standardized tests, if any, will be used. Moreover, I prefer not to identify the available alternatives so as to preserve the opportunity to administer the tests in a fresh, unprepared manner.

Signed under the pains and penalty of perjury this 25th day of July, 2007.

MARTIN J. KELLY, M.D.

2